## THE STATE ex. rel. THOMAS M. KNOX,

*vs.*

## JONATHAN A. HADLEY.

### INFORMATION IN THE NATURE OF QUO WARRANTO.

By the 6th section of the charter of the city of Watertown, (Private L. 1856, Ch. 327, and Amendment Ch. 327,) it is provided that there shall be four justices of the peace of said city, one of whom should be police justice.

The office of police justice of the city of Watertown, is distinct from that of other justices provided in the charter, and one person cannot hold both at the same time.

Under the provision of the charter for the city of Watertown, the term of the police justice was only for one year, and at most he could only exercise such powers during that period.

Whether an election for such a term conferred any judicial power: Quere ? But certainly only for the term prescribed by the charter.

After the amendment of the city charter, fixing the term of police justice for two years, the person next elected after the taking effect of that act held for the term of two years.

The respondent was summoned to appear and show by what warrant or authority he held the office of police justice of the city of Watertown. The case was heard upon the following agreed statement of facts:

" It is hereby stipulated and agreed by and between the said relator, Thomas M. Knox, and the said respondent, Jonathan A. Hadley, that the above entitled cause shall be heard and tried upon the following statement of facts, the parties to this stipulation hereby admitting such statement to be true, to wit: On the first day of April, 1856, Samuel Baird was duly elected to the office of police justice for the city of Watertown, and qualified according to law, and entered forthwith upon the duties of said office, and so continued to discharge

the duties thereof until the election and qualification of Chas. R. Gill as hereinafter mentioned, at which time he delivered over the books and papers appertaining to said office, (to the said Gill) and has not since assumed to act as police justice. At the annual election for city and ward officers held in the city of Watertown, on the 7th day of April, 1857, Charles R. Gill was duly elected as police justice of said city, and forthwith qualified according to law, and entered upon the discharge of the duties of said office, and continued to act as such police justice until Dec. 28, 1857, at which time he resigned the office; and on the same day, the common council of said city ordered a special election to be held on the fifth day of January, 1858, to fill the vacancy caused by said resignation. On the fifth day of January, 1858, such special election was held in due form of law, and the said Jonathan A. Hadley was duly elected to fill said vacancy, and forthwith qualified according to law, and took possession of the books and papers belonging to said office, and commenced acting as police justice, and so continued to act up to the present time. On the 6th day of April, 1858, at the annual election held for the purpose of electing city and ward officers of said city, the said Thomas M. Knox received nineteen votes for police justice, which were all the votes cast for any person for that office; and the said Knox forthwith qualified according to law, and received a certificate of election from the city clerk of said city, which certificate is hereto annexed, marked "B," and demanded of said Hadley the books and papers of said office, which said Hadley refused to deliver. No notice was given before the last mentioned election by the city clerk, what city officers were to be elected at such election, except the notice, of which a copy is hereto annexed, marked "A." At the said last mentioned election, the said Thos. M. Knox was elected justice of the peace of the third and fourth wards of said city, and qualified in due form of law for such last mentioned office, and from thenceforth has

been, and still is, an acting justice of the peace of said third and fourth wards."

STATE OF WISCONSIN,  } S.S. " B."
Co. of Jefferson, city of Watertown. }

I, Samuel Baird, clerk of said city, hereby certify, that on the 12th day of April, A. D. 1858, Thomas M. Knox was declared, by the common council, duly elected police justice of the city of Watertown, at an election held in and for said city, on the 6th day of April, instant, for the election of city and ward officers, he having received the greatest number of votes for said office.

In witness whereof, I have hereunto set my hand, and affixed hereto the corporate seal of said city this 17th day of April, 1858.          SAMUEL BAIRD,
                                      *City Clerk.*

The notice referred to marked " A," was simply a notice of the time and place for holding the election for city and ward officers of the city of Watertown.

*Orton & Hopkins,* for the Relator.

For the election of municipal and county judges, see page 28, section 2 R. S.

For the election of justices of the peace, see page 31, section 15 R. S.

Amendment of charter of the city of Watertown, establishing police court, see private laws of 1856, page 632, section 6. Also page 638, section 12.  Also pages 1085 and 1088, sections 1 and 8 for term of office of police justice and code of procedure of police court. Approved October 6, 1856. *Attorney General vs. McDonnell,* 3 Wis., page 805; *People vs. Maynard,* 14 Ill., 419.

The officers of associate judge of the common pleas and justice of the peace are not incompatible.   4 vol., Sergeant & Rawles

Rep., page 275. *Commonwealth of Pennsylvania vs. Sheriff of Northumberland county, Pa.*

*Charles R. Gill,* for the respondent.

The city charter of 1856, created the office of police justice, and made the police justice an *elective* officer of the city; priv. laws of '56, ch. 327, § 6 ; and by the same section " all elective officers, except justice of the peace and aldermen, are to hold their offices for one year, and until their successors are elected and qualified;" and by § 5, of the same chapter, city and ward officers are to be elected on the first Tuesday in April of each year.

Samuel Baird having been elected police justice under that law, to wit: on the 1st day of April, 1856, it follows that he was elected *for one year only.* Then the election of Charles R. Gill to the office at the April election of 1857, was regular and legal.

But it will be observed that *after* Baird's election and before the expiration of one year, the law was so changed as to make the term of office of the police justice *two* years instead of *one.* Priv. Laws of 1856, ch. 487, § 1. But this cannot be so construed as to apply to Baird, who was *then in office:* if so it would amount to an appointment of Baird to office by the Legislature, which they have no power to do, for by the constitution such officers are to be *elected by the people.* Const., art. 7, § 2. And if the Legislature had the power to appoint Baird to the office for one year longer than he was elected, they could appoint him twenty years, and thus stifle the voice of the city electors. Then it would seem that Gill's term of office would not expire till the first Tuesday of April, 1859 ; but he *resigned* in December, 1857, and the respondent was elected to fill the vacancy caused by such resignation, and by the charter (§ 7, ch. 327 of Priv. Laws of 1856,) would hold the office for the unexpired portion of Gill's term, that is, till April, 1859.

Again, the foregoing theory is based upon the assumption that no change has been made in the office of police justice since it was created; but by reference to an act approved March 7th, 1857, it will be seen that the office of police justice was in fact abolished or changed to that of justice of the peace, though such justice was still to be "*denominated* police justice." See Priv. Laws of 1857, ch. 332, § 1.

The Legislature have the right to direct in *what manner* justices of the peace shall be elected, (const., art. 7, § 15,) and prescribe what jurisdiction they shall have; (ib.,) hence they have the right to confer greater jurisdiction upon one justice of the peace in Watertown than on the others, and to call him by a different name to distinguish him from those of lesser jurisdiction. The law has provided for four justices in the city: one for the first and second wards, one for the third and fourth, and one for the fifth and sixth, and one for the city at large, "to be denominated police justice;" and no justice of the city can take cognizance of a criminal case arising in the city, or a case in which the city is a party, except the one "denominated police justice." See ch. 2, of charter, § 12; Priv. Laws of 1856, ch. 327, p. 638. Then if Gill was in fact a justice of the peace, and the respondent Hadley elected to fill the vacancy caused by his resignation, he would hold for the balance of Gill's term, that is till April 1859. Const., art. 7, § 15. Even then had there been a vacancy in the office in question at the last election, it is submitted that the relator could not be elected and qualify to fill the same, having been elected, and having qualified as justice of the third and fourth wards of said city, and that he is not now in a position to demand the office in question. Otherwise the city would have but *three* judicial officers, when the law has provided for *four*; besides the offices are the same, and one person cannot hold two offices of the same kind.

Again, § 5, of the charter, Priv. Laws of 1856, ch. 327, pro-

vides that " ten days previous notice shall be given by the common council, of the time and place of holding such elections, and of the city and ward officers to be elected;" no such notice was given of the election at which the relator claims to have been elected ; but such omission in notifying the election is cured by § 95 of ch. 6 of R. S., in cases where the " *real will* " of the electors has been expressed ; but this is not such a case. Here the relator received but *nineteen votes* for the office in question, and *only* nineteen persons voted for such an officer, while about twelve hundred votes were given for each of the other offices, showing clearly that the electors had no knowledge that such an officer was to be then chosen and had no voice in the matter. Then again, we say that if the term of the rightful incumbent of the office expired in April last, he having no successor legally elected and qualified, is still entitled to the office.

The certificate of election given to respondent by the city clerk amounts to nothing upon which he can found even a *prima facie* right, as there is no law directing or authorizing said clerk to give any certificate of election to any person ; nor is any provision made by law for canvassing votes for city officers in said city.

*By the Court,* COLE, J. From the statement of facts agreed upon by the respective parties and filed in this case, it appears that on the 6th day of April, 1858, at the annual election, held for the purpose of electing city and ward officers for the city of Watertown, the relator received nineteen votes for police justice, which were all the votes cast for any person for that office, and that the relator forthwith qualified according law ; received from the city clerk a certificate of election ; and demanded from the respondent, (who was acting as police

justice under a special election duly ordered on the 5th of January, 1858, to fill a vacancy existing or supposed to exist in that office), the books and papers relating to said office which the respondent refused to deliver. It further appears that at the same election the relator was elected to the office of justice of the peace for the third and fourth wards of said city, duly qualified for the last mentioned office, and has been and still is acting as justice of the peace for the third and fourth wards of said city.

Assuming for the purposes of this case, so far as the rights of the relator are concerned, that the main proposition relied upon by him to establish his rights to the office is sound, to wit: that the term of office of Samuel Baird, who was first elected police justice, was fixed by Section 15, Art. 7, of the constitution, for two years, the same as that of a justice of the peace, and we are still of the opinion that judgment must be given against the relator. By the sixth section of the city charter, approved March 29th, 1856, as amended, (See Private Laws of 1856, Chap. 327, and Private Laws of 1857, Chap. 332,) it is, among other things, provided that the elective officers of said city shall be one justice of the peace, who shall be denominated a police justice ; one justice of the peace for the first and second wards ; one for the third and fourth wards, and one for the fifth and sixth wards, thus clearly indicating that it was the intention of the legislature to give to said city four justices, one of whom should be a police justice, and clothed with all the authority, powers and jurisdiction conferred upon that office by the charter of the city, and the acts amendatory thereof. Now it is to be observed that the relator was elected a justice of the peace for the third and fourth wards of the city, and is now discharging the duties of that office. Can he, while holding this office, also exercise and discharge the duties of police justice? We consider that the two offices are clearly incompatible with each

other, and that one person cannot and should not hold both of them at the same time. In the plainest terms the charter gives the city four judicial officers of the grade of justice of the peace; while if the relator could make good his right to the office of police justice, it would in fact have but three. To show that the two offices were not incompatible, and could be held by the same person at the same time, we were referred to the case of Commonwealth against the sheriff and keeper of the jail of Northumberland county, 4 S. & R. 275, where it was decided that the offices of justice of the peace and associate judge of court of common pleas were not incompatible.

We do not think the two cases analagous, and therefore shall not go into an examination of the Pennsylvania case. (See *Milward vs. Thatcher*, 2 T. R. 81.)

This sufficiently disposes of the question as to the relators right to the office of police justice.

The information in this case, in conformity to chapter 126, R. S., not only sets forth that the relator is lawfully entitled to the office of police justice, but also alleges that the respondent has usurped and intruded into the same without lawful authority, and it therefore becomes necessary to pass upon the right of the respondent to this office. By the original charter, section 6, it is in effect provided that among the elective officers of the city, there should be a police justice, who should hold his office for one year and until his successor was elected and qualified. From this it is apparent that Samuel Baird, the first police justice elected in April, 1856, having only such civil and criminal jurisdiction as was conferred upon his office by law, *at most*, could exercise the duties and jurisdiction of his office for the time prescribed in the charter. He was inhibited from exercising this jurisdiction by the charter beyond the year, and until his successor was qualified. It was insisted upon the argument that a police

justice was in fact nothing more than a justice of the peace, and that when the office was created by the charter, the constitution came in and fixed the term for two years. This argument, however, if pushed to its logical consequences, would go to the extent of showing that Baird was no officer under the constitution, and could not legally perform any judicial functions. Whether this was so or not, we shall not now stop to inquire. For, as already remarked, if Baird could exercise any judicial function whatever, under the constitution and charter, he could only do so for one year, the the period limited by the charter. By chapter 487, Private Laws, 1856, the charter was amended, and the term of office of the police justice was fixed at two years. Consequently there can be no doubt but that Gill, who was elected in April, 1857, was lawfully entitled to hold the office for two years. Whether he entered upon it as the successor of Baird, or the first rightful incumbent, the consequence is the same, he could properly hold it for two years. He having resigned the office, the respondent was elected on the 5th of January last, to hold for the residue of the unexpired term of Gill.

Since the argument of this case, our attention has been called to the decision of this court in the case of O'Connor, (unreported,) in which case it is supposed we held that Baird was in fact nothing more than a justice of the peace for the city of Watertown. The case of O'Connor came before this court on a writ of *certiorari* to the county judge of Jefferson county, to determine the correctness of an order made by him, discharging on *habeas corpus* O'Connor from imprisonment, who had been duly convicted by Baird for selling liquor without license, under chapter 162, Session Laws 1851, and was committed for non-payment of the fine imposed on such conviction. The case was submitted to this court without argument or briefs, and no point was made as to the right of Baird to act as justice. We took it for granted

that he was duly elected as justice, and qualified to act in matters arising under that law, and as the mittimus was regular and proper on its face, we reversed the order of the county judge, discharging O'Connor from imprisonment.

That was the extent of the decision in that case.

The conclusion to which we have arrived, is that judgment must be given against the relator, and establishing the respondents right to the office.