[L. A. No. 1864.  Department Two.—June 24, 1907.]

CYRIL G. LAMB, Respondent, v. ULYSSES S. WEBB, Attorney-General of the State of California, and FRANCIS M. GLASS, Appellants.

QUO WARRANTO—APPLICATION BY PRIVATE PERSON FOR LEAVE TO SUE— DISCRETION OF ATTORNEY-GENERAL—CONTROL BY COURTS.—Assuming that the discretion of the attorney-general, under section 803 of the Code of Civil Procedure, in refusing leave to a private person to bring an action in the name of the state against an alleged usurper of a public office is subject to the control of a court, the power of the court to compel him to violate his own judgment by ordering him to grant leave to commence a suit, against his own conviction and conscientious belief that such leave should not be given, should be exercised only where the abuse of discretion by him in refusing the leave is extreme and clearly indefensible. When such an extreme case does not appear, a decree of a court compelling him to act against his judgment is erroneous and is itself an abuse of discretion.

ID.—INSUFFICIENT SHOWING ON APPLICATION—ALLEGATIONS ON INFORMATION AND BELIEF.—At a general election the plaintiff and the defendant Glass had been candidates for the office of supervisor, and the election resulted in a tie. In pursuance of the provisions of section 1067 of the Political Code a special election was ordered and held, at which such defendant obtained a majority of the votes cast thereat, and received his certificate of election, under which he entered upon the possession of the office and was discharging its duties. No objection to the regularity and legality of the special election had ever been made and no proceeding had ever been instituted to assail it. The plaintiff thereafter applied to the attorney-general for leave to sue the defendant Glass under section 803 of the Code of Civil Procedure on the ground that Glass was usurping the franchises of said office, and at that time presented to him a document in the form of a verified complaint which he intended to file in his proposed suit. The complaint alleged on information and belief that at the general election four named persons were allowed to vote who were not residents of their voting precincts, whose votes were counted for Glass, and that an unnamed number of ballots having distinguishing marks thereon, the nature of which was not stated, were counted for Glass, and an unnamed number of legal ballots for the plaintiff were rejected. This complaint was the only showing made to the attorney-general in support of the application for leave to sue. *Held*, that the showing made, being solely upon information and belief, was not sufficient to warrant a court in holding that the attorney-general ought to have been convinced that he had ''reason to believe''

that Glass had unlawfully intruded into and usurped said office of supervisor, and that a judgment directing a peremptory writ of mandate to the attorney-general commanding him to grant leave to sue was erroneous.

ID.—AFFIDAVITS ON APPLICATION SHOULD BE POSITIVE.—An application to the attorney-general for leave to sue under section 803 of the Code of Civil Procedure should be based on affidavits so full and positive from persons knowing the facts as to make out a clear case of right in such a way that perjury may be brought if any material allegation is false.

APPEAL from a judgment of the Superior Court of Santa Barbara County. J. M. Taggart, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and George A. Sturtevant, Assistant Attorney-General, for Appellants.

Canfield & Starbuck, for Respondent.

McFARLAND, J.—At the general election held throughout the state on November 8, 1904, the plaintiff, Lamb, and the defendant Glass were the only candidates for the office of supervisor of the third supervisorial district of the county of Santa Barbara. The board of supervisors, sitting as a canvassing board, declared the vote for this office to be a tie between said two persons, and thereupon the board ordered a special election to be held in said district to elect a supervisor therefor as provided in section 1067 of the Political Code. It is admitted that the election returns showed a tie. Lamb and Glass were both candidates at the special election, which resulted in Glass receiving a majority of eleven of the votes cast thereat. The board declared the result accordingly, and a certificate of election was issued to Glass, who entered upon the duties of the office on the first Monday of July, 1905, and has ever since been and now is the acting supervisor of said district. On June 9, 1905, plaintiff, Lamb, made application to defendant Webb, as attorney-general, for leave to sue defendant Glass under section 803 of the Code of Civil Procedure, on the ground that Glass was "usurping," etc., the franchises of said office of supervisor. The purpose of the proposed action was to show that by a recounting of the ballots cast at the said general election on November 8, 1904, there was not actually a

tie, but that by a legal count of said ballots plaintiff had a ma-
jority of the votes. The attorney-general, after a hearing,
refused to grant the leave, whereupon the plaintiff applied
to the governor of the state for an order directing the attorney-
general to grant said leave for suit; but the governor refused
to make such order. Thereupon plaintiff brought this present
proceeding to have the attorney-general compelled by *man-
damus* to grant the leave to sue; the defendant demurred to
the complaint; the court overruled the demurrer, and gave
judgment ordering a peremptory writ to issue as prayed for;
and from this judgment the defendant appeals.

The application to the attorney-general for leave to sue was
accompanied by a document in the form of a complaint, which
plaintiff intended to file in the action which he proposed to
bring against Glass if permitted to do so. This "complaint"
was verified in the usual form adopted in this state for the
verification of a pleading; and it constituted the only showing
under oath made to the attorney-general. Section 803 of the
Code of Civil Procedure, under which the application was
made, is as follows:

"An action may be brought by the attorney-general, in the
name of the people of this state, upon his own information, or
upon the complaint of a private party, against any person who
usurps, intrudes into, or unlawfully holds or exercises any pub-
lic office, civil or military, or any franchise within this state.
And the attorney-general must bring the action, whenever he
has reason to believe that any such office or franchise has been
usurped, intruded into, or unlawfully held or exercised by any
person, or when he is directed to do so by the governor."

Section 1111 of the Code of Civil Procedure declares that
any elector may contest the right of any person to an office to
which he has been "declared elected." And the procedure is
prescribed for such contest, including a recounting of the bal-
lots. There is no provision for a contest for a recounting of
the ballots where no one has been "declared elected," but
section 1067 of the Political Code provides that "If at any
election . . . two or more persons receive an equal and the
highest number of votes, there is no choice, and a special
election to fill such office must be ordered by the proper board
or officer." As the board of supervisors has no power to open
and count the ballots, the above provision evidently means

that the board must act upon the only evidence before it,—to wit, the returns of the election officers.

Under our views of the case we do not deem it necessary to decide a number of questions discussed in the briefs—as, for instance, whether or not the discretion of the attorney-general under section 803 to grant or refuse leave to commence a *quo warranto* proceeding is limited only by the control of the governor as expressly prescribed in said section; whether the provision that in case of a tie (which necessarily means a tie appearing upon the returns) there shall be a special election, is not exclusive of any other proceeding in the premises; whether the submission by respondent of his claims to the voters at the special election did not estop him from objecting to such special election as a final conclusion of the whole matter. These and certain other questions we shall not discuss, because, assuming for the purposes of this appeal that the attorney-general's discretion under the said section is not entirely beyond the control of a court, and that the other points discussed should be determined in favor of respondent, still it is clear that the power of a court to compel him to violate his own judgment by ordering him to grant leave to commence a suit, against his own conviction and conscientious belief that such leave should not be given, should be exercised only where the abuse of discretion by the attorney-general in refusing the leave is extreme and clearly indefensible. When such an extreme case does not appear, a decree of a court compelling him to act against his judgment is erroneous, and is itself an abuse of discretion.

Now, if we apply the above principles to the case at bar, we find that in refusing leave to plaintiff to commence his proceeding in *quo warranto,* the attorney-general was not only not guilty of a violation of his discretion in any extreme sense, but was not guilty of *any* want of discretion. What was the case presented to him upon the application of plaintiff for leave to sue? In the first place, it appeared that there had been a tie between the parties at the general election; that in pursuance of the provisions prescribed for such an emergency a special election was ordered; that at such election the defendant Glass received a majority of the votes cast at said election and received his certificate of election; that by virtue of such election and certificate he entered upon the

possession of the office and was discharging its duties; and that no objection to the regularity and legality of the said special election had ever been made, and no proceeding had ever been instituted to assail it. Here, then, was a perfect *prima facie* case showing that Glass had not usurped the said office, but was rightfully in its possession. And it must be remembered that the question with an attorney-general always is: Has any person usurped the franchises of the office? Did plaintiff overthrow or undermine this *prima facie* case by any showing which he made to the attorney-general? The only showing which he made was this: He presented to the attorney-general a document in the form of a verified complaint which he intended to file in his proposed suit. In the complaint there were only two statements made which, if supported by evidence of their truth, should have had any effect on the attorney-general. The first was that at the said general election four named persons were allowed to vote who were not residents of the precincts in which they were so allowed to vote, and that these votes were counted for Glass. But this statement was made wholly and expressly "upon information and belief," and therefore was of no value to the attorney-general as the presentation of any fact. The other statement was that the election officers had counted for Glass votes which were cast upon ballots that had distinguishing marks placed there for the purpose of identifying them, and rejecting the ballots for plaintiff which were unobjectionable. The character of the distinguishing marks is not given. The plaintiff says in the said complaint that he does not know the number of ballots with such distinguishing marks which were allowed by the election board or the number with plaintiff's name on which were rejected; he does not positively identify even one. But these statements are also made upon "information and belief." Outside of this "complaint" there was no attempt at any showing whatever. No affidavit or oral testimony of any person as to any fact within his knowledge touching such election was offered. The only showing made by plaintiff before the attorney-general was, therefore, that he had been informed that certain things had occurred before the election board at the general election; and upon no further evidence he asked the attorney-general to allow him to introduce litigation and confusion into the county affairs by per-

mitting him to use the former's name to commence a suit for the purpose of discovering by a recounting of the votes whether there might not have been some error committed by said board of election. Clearly, to our minds, this was not a sufficient showing to warrant a court in holding that the attorney-general ought to have been convinced that he had "reason to believe" that Glass had unlawfully intruded into and usurped said office of supervisor. The true rule on the subject is, in our opinion, expressed by the court in *Lamoreaux* v. *Ellis,* 89 Mich. 146, [50 N. W. 814], as follows: "It has been held by the king's bench that a chief object in requiring leave is to prevent vexatious prosecutions, and the rule is inflexible that there must be affidavits so full and positive from persons knowing the facts as to make out a clear case of right in such a way that perjury may be brought if any material allegation is false." (Citing many authorities.)

For the reasons above given the judgment appealed from is reversed, with directions to the court below to sustain the demurrer to the complaint.

Lorigan, J., and Henshaw, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank and filed the following opinion on the twenty-ninth day of July, 1907:—

BEATTY, C. J., dissenting.—I dissent from the order denying a rehearing of this cause for the reason that the questions which the Department has deemed it unnecessary to decide are the only questions presented by the record, while the ground upon which the decision is rested—the assumed exercise by the attorney-general of his discretion in deciding a question of fact—is shown by the record to have no existence.

All the allegations of the petition for the writ of mandate are admitted to be true. They show, among other things, that there are certain standing rules of the attorney-general's office governing applications for leave to sue in the name of the people, and that this petitioner, in presenting his application

for leave to sue, complied in every particular with the rules. One of their requirements is that the relator must produce with his application the sworn complaint which he proposes to file, and they require nothing more for the purpose of satisfying the attorney-general that there is a meritorious cause of action. In this instance a sworn complaint was presented with the application for leave to sue. If the attorney-general was not satisfied of the good faith of the petitioner, or of the truth of the matters alleged on his information and belief—matters which in cases of this kind can rarely be within the personal knowledge of the relator—it would seem that he should have given him an opportunity of supporting his petition by corroborative affidavits, and no doubt he would have done so if he had deemed it material. But he did not consider this matter at all. He did nothing in the exercise of that discretion which the court assumes that he exercised in denying the application, and this is affirmatively shown by the record. The petition sets forth a copy of the written opinion of the attorney-general, giving his reasons, and his only reasons, for denying the application. In that opinion he assumes the truth of every fact alleged in petitioner's complaint and refuses leave to sue upon the ground,—1. That the complaint does not state a cause of action; and, 2. If there ever was a cause of action the petitioner ought not to be allowed to maintain it after having been a candidate at the special election. Whether these were good reasons for refusing leave to sue, and whether in any case the attorney-general may be compelled by *mandamus* to grant leave to sue in the name of the state, were the questions really involved in the appeal, but they are not decided, because it is assumed that the attorney-general was not satisfied of the existence of facts which he has made the basis of his written decision, and its sole basis.