[Civ. No. 5000. Second Appellate District, Division Two.—April 27, 1925.]

## THE PEOPLE ex rel. THOMAS HENRY GOODELL, Appellant, v. W. R. GARRETT, Respondent.

[1] APPEAL—ORDER SUSTAINING DEMURRER—DISMISSAL.—An order sustaining a demurrer to a complaint is not an appealable order, and an appeal from such an order must therefore be dismissed.

[2] QUO WARRANTO—PARTIES.—The point that "No private citizen has any right to compel an officer to show title [to an office] until he has shown his own right in the first place to attack it" has no application to a proceeding in *quo warranto* instituted by the attorney-general in the name of the people for the purpose of testing the right of the defendant to hold the office of justice of the peace; and the relator cuts no figure in the litigation, except as an informant to the attorney-general.

[3] PUBLIC OFFICERS—APPOINTMENT OF OFFICER TO ANOTHER OFFICE—INCOMPATIBILITY OF TWO OFFICES—VACANCY.—Where an individual is an incumbent of a public office and, during such incumbency, is appointed or elected to another public office and enters upon the duties of the latter, the first office becomes at once vacant if the two are incompatible.

[4] ID.—INCOMPATIBILITY OF OFFICES—PUBLIC POLICY.—The doctrine arising from attempts by single individuals to exercise the functions of incompatible offices springs out of considerations of public policy, such considerations arising naturally from the view that two offices cannot be held by one person when, from the divergent character of the offices, the public interest will suffer thereby.

[5] ID.—PUBLIC POLICY—STATUTORY CONSTRUCTION.—The public policy which dictates that two offices should not be held by the same person may be ascertained from statutes the effect of which is to render such offices incompatible.

[6] ID. — JUSTICE OF PEACE OF SANTA MONICA TOWNSHIP — POLICE JUDGE OF SANTA MONICA CITY—INCOMPATIBILITY OF OFFICES—CONSTRUCTION OF SECTION 4014, POLITICAL CODE.—Under section 4014 of the Political Code, which provides who the officers of a township are, and which is applicable to the township of Santa Monica, in Los Angeles County, the office of justice of the peace

1. See 2 Cal. Jur. 156.

3. Right to hold two offices at same time, notes, 2 Ann. Cas. 380; 10 Ann. Cas. 697; Ann. Cas. 1915A, 525.

General rule as to incompatibility of offices at common law, note, L. R. A. 1917A, 216. See, also, 22 R. C. L. 412; 21 Cal. Jur. 835.

of the township of Santa Monica and the office of police judge provided for by the freeholders' charter of the city of Santa Monica are incompatible, and, therefore, both offices cannot legally be held by the same person.

[7] ID.—APPOINTMENT OF JUSTICE OF PEACE TO POSITION OF POLICE JUDGE—VACANCY OF FORMER POSITION.—Where a justice of the peace of Santa Monica township was appointed to fill the vacancy of police judge of the city of Santa Monica, and entered upon the discharge of the duties of that office; the position of justice of the peace became vacant under the law.

[8] ID.—SECTION 4014, POLITICAL CODE—STATUTORY CONSTRUCTION.— The fact that the people of Santa Monica never availed themselves of the provision of section 4014 of the Political Code allowing them two township justices of the peace and that there never has been in the township more than one such justice does not affect the question as to how the section should be construed.

[9] ID.—SECTION 4428, POLITICAL CODE—STATUTORY CONSTRUCTION.— Section 4428 of the Political Code, which provides that when a police judge is disqualified, ill, or absent from the city of his jurisdiction he may "by written request call in any justice of the same county to act in his place and stead," must be read in connection with section 4014 of the same code; and the former section means only that, despite the provisions of section 4014, a justice of the peace may temporarily occupy the bench of a police judge, to the end that the administration of justice may not be impeded by the disqualification, illness, or absence of the incumbent magistrate.

(1) 3 C. J., p. 558, n. 3; 32 Cyc., p. 1466, n. 39.    (2) 32 Cyc., p. 1441, n. 13 New.    (3) 29 Cyc., p. 1382, n. 81.    (4) 29 Cyc., p. 1382, n. 81.    (5) 29 Cyc., p. 1382, n. 81.    (6) 29 Cyc., p. 1382, n. 81.    (7) 29 Cyc., p. 1382, n. 81.    (8) 29 Cyc., p. 1382, n. 81. (9) 29 Cyc., p. 1382, n. 81.

APPEAL from a judgment of the Superior Court of Los Angeles County.  Hartley Shaw, Judge.  Reversed.

The facts are stated in the opinion of the court.

Weber & Crawford for Appellant.

Edward T. Bishop, County Counsel, and Everett W. Mattoon, Chief Deputy County Counsel, for Respondent.

Chester Coffin, City Attorney of Santa Monica, Tanner, Odell & Taft, M. F. Fogel, F. D. Macomber, W. Blair Gib-

6. See 22 R. C. L. 416.

bons, B. G. Hurlburt, Willard Conklin, F. W. Shapleigh, C. E. Salisbury, Alfred Black, Sr., W. D. Miller and A. E. O'Flaherty, *Amici Curiae.*

WORKS, J.—This is a proceeding in *quo warranto* instituted for the purpose of testing the right of defendant to hold the office of justice of the peace. A demurrer to the complaint was sustained without leave to amend and judgment went for defendant. Plaintiff appeals from the order sustaining the demurrer and from the judgment.

[1] The order sustaining the demurrer is not an appealable one. The appeal from the order must therefore be dismissed.

The complaint alleges that respondent was elected a justice of the peace of Santa Monica township, in Los Angeles County, in November, 1922, and that he qualified as such justice on January 4, 1923; that at all times since the date last mentioned he has been such justice except as in the complaint later alleged; that Santa Monica township is a judicial township, created under the constitution and laws of the state; that the city of Santa Monica is a municipal corporation, operating under a freeholders' charter adopted and ratified as provided in the constitution; that the freeholders' charter of the city of Santa Monica provides for a police judge; that the civil jurisdiction of the police court of Santa Monica is coextensive with that of the Santa Monica township court, but that the former has "exclusive jurisdiction over all high grade misdemeanors as provided by law"; that on April 21, 1924, a vacancy having arisen in the said office of police judge by the death of the incumbent theretofore exercising the duties of the office, respondent was appointed police judge to fill such vacancy; and that respondent accepted said appointment, thereafter qualified as such police judge and has ever since acted as such. The complaint contains other allegations, but with the view which we entertain of the law as applied to those already set forth, there is no necessity for referring to other averments of the pleading. The prayer is that it be decreed that respondent unlawfully holds the office of justice of the peace, that the office be adjudged to be vacant, and for general relief.

[2] It is contended by the friends of the court—and several authorities are cited to support the contention—that:

''No private citizen has any right to compel an officer to show title [to an office] until he has shown his own right in the first place to attack it.'' (*Vrooman* v. *Michie,* 69 Mich. 42 [36 N. W. 749]), and that therefore the complaint is insufficient. The case from which the language of the point is taken was one in which a relator claimed title to an office as a holdover because of an alleged defect in the title of the defendant, or respondent, whom he sought to displace. No such claim is made here. The relator in the present instance cuts no figure in the litigation, evidently, except as an informant to the attorney-general, who institutes the proceeding in the name of the People for the purpose of settling a question in which the public appears to have an interest. At any rate, the complaint will bear no other construction. Such an action is provided for by the terms of section 803 of the Code of Civil Procedure, and the enactment is by express provision made mandatory upon the attorney-general whenever a proper case is shown him. While the name of this officer of the state is not upon the briefs on this appeal, it is appended to the copy of the complaint which appears in the record brought up from the trial court. The point made seems, therefore, to have no application here. *Lamb* v. *Webb,* 151 Cal. 451 [91 Pac. 102, 646], has no bearing upon the present case.

[3] The rule is settled with unanimity that where an individual is an incumbent of a public office and, during such incumbency, is appointed or elected to another public office and enters upon the duties of the latter, the first office becomes at once vacant if the two are incompatible (Mechem on Public Officers, sec. 419; 22 R. C. L., tit. ''Public Officers,'' sec. 63). It is contended by appellant that the two offices now held by respondent are incompatible and that under the rule stated he is an interloper in the first office entered by him, that of justice of the peace, because of his occupancy of the second office, that of police judge. The question whether the two positions are incompatible is the question of moment to be determined on the appeal.

[4] The doctrine arising from attempts by single individuals to exercise the functions of incompatible offices springs out of considerations of public policy (Mechem on Public Officers, sec. 422; 22 R. C. L., tit. ''Public Officers,'' sec. 55; *Bryan* v. *Cattell,* 15 Iowa, 538; *State* v. *Buttz,* 9 S. C.

156; *State* v. *Jones,* 130 Wis. 572 [118 Am. St. Rep. 1042, 10 Ann. Cas. 696, 8 L. R. A. (N. S.) 1107, 110 N. W. 431]; *State* v. *Wait,* 92 Neb. 313 [43 L. R. A. (N. S.) 282, 138 N. W. 159]; *State* v. *Wittmer,* 50 Mont. 22 [144 Pac. 648]), such considerations arising naturally from the view that two offices cannot be held by one person when, from the divergent character of the offices, the public interest will suffer thereby. In a leading case which deals with the doctrine the following dogmatic and apparently exclusive language is employed: "Incompatibility between two offices, is an inconsistency in the functions of the two; as judge and clerk of the same court—officer who presents his personal account subject to audit, and officer whose duty it is to audit it. The case of Bryant (4 T. R., 715, and 5 Id., 509), cited by appellant, does not conflict with this view. It was decided upon the meaning of the particular statute, which required the personal presence of the officer at the prison. Where one office is not subordinate to the other, nor the relations of the one to the other such as are inconsistent and repugnant, there is not that incompatibility from which the law declares that the acceptance of the one is the vacation of the other. The force of the word, in its application to this matter is, that from the nature and relations to each other, of the two places, they ought not to be held by the same person, from the contrariety and antagonism which would result in the attempt by one person to faithfully and impartially discharge the duties of one, toward the incumbent of the other. Thus, a man may not be landlord and tenant of the same premises. He may be landlord of one farm and tenant of another, though he may not at the same hour be able to do the duty of each relation. The offices must subordinate, one the other, and they must, *per se,* have the right to interfere, one with the other, before they are incompatible at common law" (*People* v. *Green,* 58 N. Y. 295, 304). It is not meant by this decided language that offices will not be incompatible unless they fit or come within some expression contained in the language quoted. "It is extremely difficult to lay down any clear and comprehensive rule as to what constitutes incompatible offices" (22 R. C. L., tit. "Public Officers," sec. 55). "It seems to be supposed that, in order to render two offices incompatible, there must

be some such relation between them as that of master and servant—that the one must have controlment of the other, or that the one must be charged with the duty of auditing or supervising the accounts of the other, or that the one must be chosen by or have the power of removal over the other. Now, while authorities have been cited to show that offices bearing such relations to each other have been held to be incompatible, they merely afford instances of incompatible offices, and do not furnish, nor do they pretend to furnish, definitions; and therefore it does not by any means follow that these are all the instances in which offices can be said to be incompatible. For example, the case of *Rex* v. *Jones,* 1 B. & Adol. 677 (20 E. C. L. R. 467), is cited apparently for the purpose of introducing what is called a definition of incompatible offices by Lord Tenterden. But it is apparent, not only from the context, but from the very phraseology quoted, that his remark was not intended as a definition but merely as an instance of an illustration of what would be incompatible offices." (*State* v. *Buttz, supra*). These expressions of the South Carolina court and others of a like character which are to be found in the opinion from which the quotation is taken apply as well to *People* v. *Green, supra,* as they do to *Rex* v. *Jones.* It is evident from this circumstance, as well as from the general nature of the subject involved, that the New York court intended merely to specify particular situations which would stamp two offices, when considered together, with the quality of incompatibility, not that the situations named by the court furnished an all-inclusive guide for the ascertainment of incompatibility. The relationship between offices which will lead to a judicial determination that they are incompatible and cannot therefore be held by one person will always appear when, to quote from a standard text-book, "the nature and duties of the two offices are such as to render it improper, from consideration of public policy, for one incumbent to retain both" (Dillon on Municipal Corporations, 5th ed., sec. 419). The nature and the duties of two offices asserted to be incompatible may be found, as a matter of course, in legislative enactment or constitutional provision. For example, the constitution of Indiana either provides, or formerly did provide, that no man may hold two lucrative offices, either state or national, at the same time (*Foltz* v. *Kerlin,* 105 Ind.

221 [55 Am. St. Rep. 197, 4 N. E. 439, 5 N. E. 672]), and the organic law of Texas inhibits the holding by one person at one time of more than one office of emolument (*Odem* v. *Independent School Dist.* (Tex. Civ. App.), 234 S. W. 1090). Our own constitution provides (art. IV, sec. 20): "No person holding any lucrative office under the United States, or any other power, shall be eligible to any civil office of profit under this state." Many inhibitions of a kindred character are to be found in the constitutions and statutes of the various states. Leaving such positive declarations, it is obvious that less direct provisions may be found in legislative enactments, necessarily to be construed as so operating as to prevent the holding of a plurality of offices by one and the same individual. [5] In other words, the public policy which dictates that two offices should not be held by the same person may be ascertained from statutes the effect of which is to render such offices incompatible (*State* v. *Anderson,* 155 Iowa,. 271 [Ann. Cas. 1915A, 523, 136 N. W. 128]; *Howard* v. *Harrington,* 114 Me. 443 [L. R. A. 1917A, 211, 96 Atl. 769]).

With this introduction we proceed to inquire into the expressions of the legislative will concerning the two officers which are in question here. The officer to whom we have heretofore referred as a police judge is sometimes known in the legislative parlance of the state as a city justice of the peace, as contradistinguished from a township justice of the peace, the latter office being that to which respondent had been elected before he accepted an appointment as "police judge," and of which he has been performing the duties since such appointment, despite the objections of appellant as to his right so to do. City justices of the peace (police judges) can be selected, under the general law, only from that class of persons who have been admitted to practice law (Code Civ. Proc., sec. 103). The same test of eligibility is found in the freeholders' charter of the city of Santa Monica (Stats. 1915, p. 1724). No such requirement applies to township justices of the peace. It is required by the freeholders' charter that all elective officers of the city of Santa Monica, among which is the "police judge," shall have resided in the city continuously one year next preceding their election (Stats. 1915, p. 1724). The law contains no provision as to the place of residence of one who would become a township

justice of the peace. It is provided in the freeholders' charter of the city of Santa Monica that the police court of the municipality shall have exclusive jurisdiction of criminal proceedings for the violation of city ordinances, of all civil actions and proceedings arising out of such violation, and for the collection of any license required by ordinance, except when jurisdiction exists in other courts under the constitution (Stats. 1907, p. 1043, art. XIV, sec. 3). By the charter the tribunal is also given exclusive jurisdiction of certain public offenses against the statutes of the state, when not prosecuted under ·indictment or information (Id., p. 1044, sec. 4), and it is given concurrent jurisdiction with the justice court of Santa Monica township of civil cases arising in the city which would be cognizable under the law by the justice court (Id., p. 1044, sec. 5). By the organic law of the city the police court is required always to be open for the transaction of business, except on legal holidays (Id., p. 1044, sec. 10). No such provision of law exists as applied to township justice courts. The foregoing will exhibit some of the differences between the two tribunals over which respondent now presides, and it must be admitted that under the many authorities bearing upon the subject they probably furnish little if any weight in impelling to the view that the two offices are not compatible.

[6] There is, however, one enactment which in our view is of controlling moment in a determination of the question before us. Section 4014 of the Political Code provides, in part, italics, of course, being ours: "The *officers* of a township are, *two justices* of the peace, . . . and such subordinate officers as are provided by law. In townships containing cities, or parts of cities, of the second, third, fourth, or fifth class, in which city justices [police judges] or recorders are elected or appointed, there shall be but one justice of the peace." It is conceded in the briefs that these provisions apply to Santa Monica township. To our minds they appear to be plain in their application and to require but little comment. They import to us that the people of Santa Monica, speaking of the place as both a city and a township, are entitled, but for the interposition of the freeholders' charter, to two officers known as township justices of the peace, not to two township justice courts which might be presided over by one and the same person. This

view, if not plain from what has been quoted from the section, is rendered impregnable by reference to a provision of the enactment which follows soon after the portion above set forth. The provision alluded to reads that "in townships containing cities of the first, and one-half class there shall be four justices of the peace." Could these four justices be one person? If they could not, how could the two which are provided for townships like Santa Monica be one person? If the four could be one and the two could be one, what sense is there in the enactment? What efficient administration of justice is by the law then provided for townships of differing populations, classifications, of course, being made according to population? The answers to all these questions seem obvious. Then to the next step: It appears certain that section 4014 intends that, when a police judge is to be appointed in a city like Santa Monica, he is to take the place in the scheme of things of one of the township justices of the peace. It appears to us idle, under the language of section 4014, to suppose that, having been entitled to two officers, two township justices, before the adoption of a charter providing for a police judge, the people of Santa Monica must be satisfied under the law with one officer exercising two offices after the adoption of the charter. It appears to us that the provisions of section 4014 exhibits a public policy which is violated by the attempted retention of both offices by respondent. In our opinion the two offices are incompatible. Not only do we entertain that view upon a reading of section 4014, but it is supported by *State* v. *Hadley,* 7 Wis. 700, and by *State* v. *Anderson, supra.* [7] The office of township justice, now being attempted to be exercised by respondent, is therefore vacant under the law.

[8] Our attention is called by respondent to the fact that the people of Santa Monica never availed themselves of the provision of section 4014 allowing them two township justices of the peace and that there never has been in the township more than one such justice. This circumstance boots nothing in an endeavor to ascertain the meaning of the law. The question here involved is purely one of statutory construction and that question cannot be affected by the mere fact that the statute had not been put to its full use. There the section is. The question is, merely, what does it mean?

Section 4428 of the Political Code provides that when a police judge is disqualified, ill, or absent from the city of his jurisdiction he may "by written request call in any justice of the same county to act in his place and stead." It is contended by the friends of the court that his language indicates a legislative intent that a person who is a justice of the peace may at the same time take a police judgeship and permanently hold both posts. We cannot follow our friends in this contention. [9] The section must be read in connection with section 4014 of the same code, which we have already construed. Section 4428 means only that, despite the provisions of section 4014, a justice of the peace may temporarily occupy the bench of a police judge, to the end that the administration of justice may not be impeded by the disqualification, illness or absence of the incumbent magistrate. Exactly this view of the law, under similar circumstances, is taken in at least one case (*In re Corum,* 62 Kan. 271 [84 Am. St. Rep. 382, 62 Pac. 661]). The section in no way casts light upon the question before us.

The judgment must be reversed, but under the circumstances of the case we cannot direct the trial court to overrule the demurrer to the complaint. The demurrer was both general and special and it is stated in the briefs that the court sustained it upon the theory that the general demurrer was good, without reference to the special demurrer. This situation is also indicated by the court's refusal to permit an amendment of the complaint. The question as to the integrity of the complaint when tested by the special demurrer has not been argued in the briefs and we have not, of course, considered it. The special demurrer may be good or it may not. If it is good the complaint doubtless may be perfected by amendment. All we decide is that the pleading states a cause of action.

The appeal from the order sustaining the demurrer is dismissed. The judgment is reversed, with directions to the trial court to proceed with the action in accordance with the views expressed in this opinion.

Finlayson, P. J., and Craig, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 25, 1925.

Shenk, J., dissented.