BILL LOCKYER Attorney General ANTHONY S. DA VIGO Deputy Attorney General
JONATHAN FRIEMAN has requested this office to grant leave to sue in quo warranto upon the following question:
Are the San Rafael Rock Quarry, Inc., the Dutra Group, Dutra Materials, and
Dutra Dredging unlawfully holding or exercising their corporate franchises?
 CONCLUSION
The filing of a quo warranto action to determine whether the San Rafael Rock Quarry, Inc., the Dutra Group, Dutra Materials, and Dutra Dredging are unlawfully holding or exercising their corporate franchises would not be in the public interest due to pending litigation involving the same underlying allegations and thus the application for leave to sue is denied.
 ANALYSIS
Jonathan Frieman ("Frieman") contends that the Dutra Group is the parent company of Dutra Dredging, a corporation, Dutra Materials, a corporation, and San Rafael Rock Quarry, a corporation ("Dutra Group"), and has expanded the operations of a rock quarry beyond that allowed under a use permit issued by the county. Frieman also alleges that the Dutra Group has built and occupied buildings on its property without obtaining the requisite permits from the county, has violated regulations and permits pertaining to its surface mining operations and has released air contaminants and other materials in violation of various state laws, among other acts injurious to the public.
On September 25, 2001, Frieman and others filed a complaint for damages, injunction and restitution against the Dutra Group based on allegations essentially similar to those set forth in connection with his application for leave to sue in quo warranto. The litigation is presently pending.
On September 26, 2001, another complaint for damages, injunction and restitution was filed against the Dutra Group based on allegations essentially similar to some of those set forth in connection with Frieman's application for leave to sue in quo warranto, which litigation is presently pending.
On September 26, 2001, the Attorney General filed on behalf of the People of the State of California a complaint for injunctive relief and civil penalties against the Dutra Group based on allegations essentially similar to some of those set forth in connection with Frieman's application for leave to sue in quo warranto, which litigation is presently pending.
On September 26, 2001, the county filed a complaint for injunctive relief, civil penalties and damages against the Dutra Group based on allegations essentially similar to those set forth in connection with Frieman's application for leave to sue in quo warranto, which litigation is presently pending.
In deciding whether to grant leave to sue in the name of the People of the State of California in a quo warranto action, we consider initially whether there exists a substantial question of law or fact that requires judicial resolution, and, if so, whether the proposed action would serve the overall public interest. (81 Ops.Cal.Atty.Gen. 240, 241 (1998).) Code of Civil Procedure section 803 provides as follows:
 "An action may be brought by the attorney-general in the name of the people of this state, upon his own information, or upon a complaint of a private party, against . . . any franchise, or against any corporation, either de jure or de facto, which usurps, intrudes into, or unlawfully holds or exercises any franchise, within this state. And the attorney-general must bring the action, whenever he has reason to believe that any such . . . franchise has been usurped, intruded into, or unlawfully held or exercised by any person. . . ."
The term "franchise" is commonly used synonymously with the terms "right" or "privilege." (6 Ops.Cal.Atty.Gen. 37, 38 (1945); comparePeople v. Volcano Canyon T. Co. (1893) 100 Cal. 87 [franchise to collect tolls on public highway]; People v. City of Oakland (1891) 92 Cal. 611
[power of municipal corporation to tax inhabitants not within its territorial limits]; People v. Dashaway Association (1890) 84 Cal. 114
[misapplication of corporate funds to purposes not within franchise];People v. City of Riverside (1885) 66 Cal. 288 [franchise to operate as a municipal corporation]; Citizens Utilities Co. v. Superior Court (1976)56 Cal.App.3d 399 [franchise to conduct water system]; Gurtz v. City ofSan Bruno (1935) 8 Cal.App.2d 399 [authority of a city to enter into contract for collection and disposal of garbage]; 76 Ops.Cal.Atty.Gen. 118 (1993) [franchise to operate cable television system]; 6 Ops.Cal.Atty.Gen. 37, supra, [privilege of county housing authority to operate in city].)
In addressing whether the Dutra Group has usurped or unlawfully exercised its corporate franchises, we note that in People v. MilkProducers Assn. (1923) 60 Cal.App. 439, 443, the court stated:
 ". . . It certainly is a matter of public concern that a corporation, under the color or guise of a nonprofit concern, is usurping the functions of an ordinary corporation by employing its capital to engage in business for a profit and is combining with others in the illegal restraint of trade. Such a corporation is not only usurping a franchise in violation of the quasi-contract from which [it] derives its power from the state, but, in violating the law, it is exercising a power which the state denies to all persons. The illegal practices complained of are by the complaint made a feature of the business conducted for a profit — a kind of business which defendant has no right to engage in."
From the foregoing, it appears that corporate conduct may constitute a usurpation of franchise (1) which is unlawful, although not in excess of the corporation's powers (People v. Milk Producers Assn., supra,60 Cal.App. at 443 [combinations in restraint of trade]; 22 Ops.Cal.Atty.Gen. 113, 116-117 (1953) [insurance company's attempt to influence jurors] or (2) which may not be unlawful in itself, but which is in excess of the corporation's powers (People v. Milk ProducersAssn., supra, 60 Cal.App. at 443 [nonprofit corporation engaged in business for profit]; People v. California Protective Corp. (1926)76 Cal.App. 354, 361 [corporate practice of law]).
In an earlier case, People v. Dashaway Association, supra, 84 Cal. 114, the Supreme Court drew a distinction between the two kinds of cases involving a forfeiture of corporate franchise:
"Cases of forfeiture are said to be divided into two great classes:
 "1. Cases of perversion; as where a corporation does an act inconsistent with the nature and destructive of the ends and purposes of the grant. In such cases, unless the perversion is such as to amount to an injury to the public, who are interested in the franchise, it will not work a forfeiture.
 "2. Cases of usurpation; as where a corporation exercises a power which it has no right to exercise. In this last case the question of forfeiture is not dependent, as in the former, upon any interest or injury to the public." (Id. at p. 119.)
In the matter under consideration, it is contended that the Dutra Group has engaged in specified activities in violation of certain statutes and ordinances. It is not contended that any of the specified activities were undertaken in violation of the charter or of the laws regulating the charter under which the Dutra Group operates. Hence, we are concerned with a case involving the exercise of an authorized power, i.e., the operation of a rock quarry, in a manner alleged to be unlawful or inconsistent with the objectives of the grant.
These precise legal issues, however, are already the focus of four pending lawsuits against the Dutra Group, including one brought by Frieman and one brought by the Attorney General on behalf of the People of the State of California. The lawsuits seek injunctive relief, civil penalties and other forms of relief. We have repeatedly denied, in the public interest, leave to sue in quo warranto when other judicial remedies are available and pending. (See 80 Ops.Cal.Atty.Gen. 290, 292-293 (1997); 75 Ops.Cal.Atty.Gen. 70, 74 (1992); 74 Ops.Cal.Atty.Gen. 31, 32 (1991); 73 Ops.Cal.Atty.Gen. 188, 190 (1990); 73 Ops.Cal.Atty.Gen. 109, 110 (1990); 12 Ops.Cal.Atty.Gen. 340, 342 (1949).) In 77 Ops.Cal.Atty.Gen. 65, 70 (1994), for example, we observed:
 "Generally speaking, a section 803
proceeding is maintained where it is the only available remedy. (San Ysidro Irrigation District v. Superior Court (1961) 56 Cal.2d 708, 713-715; International Association of Fire Fighters v. City of Oakland (1985) 174 Cal.App.3d 687, 693-698; Oakland Municipal Improvement League v. City of Oakland (1972) 23 Cal.App.3d 165, 169; Hallinan v. Mellon (1963) 218 Cal.App.2d 342, 344-348; Wilson v. San Francisco
(1960) 186 Cal.App.2d 603, 611.) Here, at least two lawsuits are currently pending that raise the primary issue of whether Adelanto or VVEDA has the authority to redevelop GAFB. We conclude that another lawsuit involving the same issue would not be in the public interest."
Over 50 years ago, we stated in 9 Ops.Cal.Atty.Gen. 1, 2 (1947):
 ". . . The right to proceed in quo warranto is time honored, and the Attorney General is of the opinion that in exercising the power vested in him he should give careful consideration to the question as to whether the leave to sue should issue in each case to the end that there will be presented to the courts actions brought in the name of the People of the State only in cases where such a course is the only one open to the proposed relator."
Finally, with respect to the exercise of discretion by the Attorney General in considering an application to file a quo warranto action, the court in City of Campbell v. Mosk (1961) 197 Cal.App.2d 640, 646-648, summarized the governing principles:
 ". . . Section 803 of the Code of Civil Procedure defines the function of the Attorney General as to quo warranto: `An action may be brought by the attorney-general . . . upon his own information, or upon a complaint of a private party, against any person who usurps, intruders into, or unlawfully holds or exercises any public office, civil or military, or any franchise, or against any corporation, either de jure or de facto, which usurps, intrudes into, or unlawfully holds or exercises any franchise, within this State. And the attorney-general must bring the action, whenever he has reason to believe that any such office or franchise has been usurped . . . or when he is directed to do so by the governor.'
 "Apparently Lamb v. Webb (1907) 151 Cal. 451 is the only California decision which discusses the role of the Attorney General pursuant to the statute in the type of situation before us. In that action against an alleged usurper of public office, the applicant contended, upon affidavit on information and belief, `that he had been informed that certain things had occurred before the election board at the general election. . . .' The court declared that this showing did not suffice. As to the function of the Attorney General, the court said: `[A]ssuming for the purposes of this appeal that the attorney-general's discretion under the said section [Code Civ. Proc., § 803] is not entirely beyond the control of a court . . . still it is clear that the power of a court to compel him to violate his own judgment by ordering him to grant leave to commence a suit, against his own conviction and conscientious belief that such leave should not be given, should be exercised only where the abuse of discretion by the attorney-general in refusing the leave is extreme and clearly indefensible. When such an extreme case does not appear, a decree of a court compelling him to act against his judgment is erroneous, and is itself an abuse of discretion.'
 "Cases arising from comparable situations make it clear that the Attorney General need not automatically grant leave to file any kind of suit presented to him if he does not in the exercise of his discretion deem it a proper subject for litigation. . . .
". . . . . . . . . . . . . . . . . . . . . . . . .
 "Cases from jurisdictions other than California recognize the inherent requirement that the issuance of the leave to sue depends upon an exercise of the Attorney General's discretion. . . . The above rulings, articulating the philosophy of Lamb, demonstrate that the last line of section 803, stating that `the attorney-general must bring the action, whenever he has reason to believe' the usurpation has occurred, does not exclude the exercise of his discretion."
We conclude that the filing of a quo warranto action to determine whether the Dutra Group is unlawfully holding or exercising its corporate franchises would not be in the public interest due to pending litigation involving the same underlying allegations. The application for leave to sue is therefore DENIED.[1]
[1] Frieman has also requested that the Attorney General file an action under the terms of Corporations Code section 1801, subdivision (a) ["The Attorney General may bring an action against any domestic corporation . . . in the name of the people of this state, . . . upon complaint of a private party, to procure a judgment dissolving the corporation. . . ."]. For the reasons specified in denying the application for leave to sue in quo warranto, the application to bring an action to dissolve the Dutra Group is also denied.