[L. A. No. 6536. In Bank.—August 10, 1921.]

## FRED A. HEILBRON, et al., Appellants, v. CHARLES E. SUMNER et al., Respondents.

[1] MUNICIPAL CORPORATIONS—SAN DIEGO—CONSTRUCTION OF WATER-WORKS—EXPENDITURE OF MONEY—COMMON COUNCIL—CHARTER.— Under the charter of the city of San Diego, the power to erect a dam as a part of its municipal water system, or contract for the erection thereof, and to expend a fund obtained by the sale of bonds issued by the city for such purpose under the provisions of the Bonding Act of 1901 (Stats. 1901, p. 27), is vested in the common council under section 1, chapter 2, article II, subdivisions 52 and 54, as amended in 1919, giving such body control of all public works, not otherwise provided for in the charter, and not in the board of water commissioners, notwithstanding the addition to such charter in the same year of a chapter creating a board of water commissioners and giving it exclusive charge of the water impounding system of the city, since, in view of the other provisions of the charter, such board is not to have such charge until after the construction of the system.

[2] ID.—MUNICIPAL AFFAIRS—IMMUNITY FROM GENERAL LAWS—RIGHT OF CHARTERED CITIES.—A city which has amended its charter so as to come under section 6 of article XI of the constitution, as amended in 1914, authorizing cities having a freeholders' charter to empower themselves to make and enforce laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations of their charters, is not subject to general laws in matters concerning municipal affairs except as the charter itself may provide.

[3] ID.—CONTRACTING OF DEBTS AND LIABILITIES—LIMITATION UPON POWER OF COMMON COUNCIL—CONSTRUCTION OF SAN DIEGO CHARTER.—The provisions of sections 12 and 13, chapter 2, article VI, of the charter of the city of San Diego that the common council must not contract debts or liabilities exceeding the income and revenue for any year without the assent of two-thirds of the qualified voters voting at an election on the subject, and that the proceedings taken for raising the money shall be in accordance with the general law in force at the time, do not apply to a liability or indebtedness incurred in entering into a contract for the construction of the works to be constructed with the bond money, but refer to the liability incurred by the issuance and sale of the bonds and the procurement of the money to be used in the erection of the works.

APPEAL from a judgment of the Superior Court of San Diego County. S. M. Marsh, Judge. Reversed.

The facts are stated in the opinion of the court.

S. J. Higgins, City Attorney, and A. F. H. Wright, Deputy City Attorney, for Appellants.

Charles E. Sumner and Heskett, Sample & Harden for Respondents.

SHAW, J.—This is an appeal by the plaintiffs from a judgment given in the court below upon an agreed case submitted to it, as provided by sections 1138, 1139, and 1140 of the Code of Civil Procedure.

The plaintiffs are members of the common council of the city of San Diego, and the defendants are the members of the board of water commissioners of said city.

The matter submitted for decision was the question whether the common council of the city, or the board of water commissioners of the city, is empowered to expend a certain fund in the city treasury obtained by the sale of bonds issued by the city, pursuant to an election authorizing the same, to raise funds for the acquisition, construction, and completion of a dam on Cottonwood River at a place known as Barrett dam site, in the county of San Diego, but outside of the city of San Diego.

The dam was to be made for the purpose of impounding water. Apparently the city is carrying on a system of waterworks for the distribution of water within the city for municipal, domestic, and other uses, and the said dam is to constitute a part of that system. The case is argued by both parties on that theory and we will assume it to be true, although the agreed statement does not so declare.

[1] We are of the opinion that the power to erect said dam or contract for the erection thereof and expend the said sum for so doing is lodged in the common council of the city and not in the board of water commissioners.

The bonds were issued under the provisions of the Bonding Act of 1901. (Stats. 1901, p. 27.) This act provides a method of procedure for the calling of an election to submit the question of the issuance of the bonds to popular approval

and authorizes the issue thereof in case the election is favorable thereto. Section 9 of the act, as amended in 1907 (Stats. 1907, p. 611), provides, that "in cities, towns or municipalities operating under a charter, heretofore or hereafter framed under section 8 of article XI of the constitution and providing for a board of public works all the matters and things required in this section to be done and performed by the legislative branch of the municipality shall be done and performed by the board of public works of such city, town or municipality, and, in case such charter also prescribes the manner of letting and entering into contracts for the furnishing of labor, materials or supplies for the constructing or completion of public works or improvements, the contracts therefor shall be let and entered into in conformity with such charter."

The city of San Diego in 1919 amended its charter so as to come under section 6, article XI, of the constitution as amended in 1914, authorizing cities having a freeholders' charter to empower themselves to make and enforce laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations in their charters. (Sec. 1, c. 2, art. II, subd. 54, Stats. 1919, p. 1532.) As a result thereof the city is not subject to general laws in matters concerning municipal affairs except as the charter itself may provide. (*Civic Center Assn.* v. *Railroad Commission,* 175 Cal. 448, [166 Pac. 351]; *Morgan* v. *Los Angeles,* 182 Cal. 301, [187 Pac. 1050, 1052].) Subdivision 52 of the same section, amended at the same time, provides that: "The common council shall have charge, superintendence, and control of all public works of every kind, where not otherwise provided for in this charter, to be done for the city, or for any board or department thereof, and also of the furnishing of all labor, work, materials and supplies for said city. This charge, superintendence and control of public work shall be subject, however, to such ordinances as the common council may from time to time adopt."

No ordinance has been adopted in regard to the matter here in controversy transferring any power to the board of water commissioners, and therefore the powers of the common council remain as stated in subdivision 52. This subdivision was a re-enactment of the provision as it previously stood in that section of the charter. **[2]** It is obvious that

the matter of erecting a dam for the purpose of impounding water for use in the public water system carried on by the city of San Diego for the benefit of itself and its inhabitants is exclusively a municipal affair. Consequently, since the charter provides that the council shall have charge thereof, the provisions of the act of 1901 and the amendment thereto in 1907, providing that in cities which have a board of public works that board shall have charge of the expenditures of money raised by the issuance of bonds under that act is rendered nugatory by the provision of the charter. The charter prevails over the general law in regard to all munici- · pal affairs concerning which the charter speaks. The question is, therefore, to be determined with reference solely to the provisions of the charter itself, for the general law aforesaid is not applicable. Furthermore, it is to be observed that the charter of the city of San Diego does not provide for any board of public works and, hence, it does not come within the terms of the proviso in section 9 of the Bonding Act aforesaid.

Other provisions of the charter confirm the proposition that the matter is committed to the common council. Subdivision 29 of section 1 aforesaid of the charter provides that the council shall have power "to adopt, enter into and carry out means for securing a supply of water for the use of the city, or its inhabitants, or for irrigating purposes therein, and along the line of its water supply." This provision confers upon the common council power to use all means necessary for securing a supply of water. It would, therefore, include the power to con'ract for the construction of a dam, and to use the money of the city and supervise its expenditure for such construction, to impound the water necessary for the city use.

We find nothing in the charter which has the effect of transferring this power to the board of water commissioners. In 1919 the charter was further amended by adding a new chapter to article V thereof, numbered I, providing for a "water development board." This chapter created the board of water commissioners, the defendant herein, and confers upon it all the power that it has. Section 4 provides that said board "shall have exclusive charge and supervision of the conservation and impounding of water by said city and of the water, water rights, waterworks, water impounding

system, and other properties of said city used in the development of said water impounding system." It is under this provision that the board of water commissioners claims the authority to have exclusive charge of the construction of the said dam and of the expenditure of the bond money for that purpose. But, in view of the other provisions of the charter, we think the proper construction of this section is that the board shall have charge of the operation and preservation of said system after it is constructed, and that it was not the intention to confer upon the board exclusive power to provide for and construct the waterworks of which it is to have supervision. The several provisions of the charter should be harmonized as far as possible. If the contention in behalf of the board as to the effect of section 4 is correct, the result would be that the two provisions we have referred to are in direct conflict, one giving the power to the common council and the other giving the same power to the board of water commissioners, both provisions being adopted at the same time. It is reasonable to believe that the intention was to charge the common council with the duty of providing the waterworks and charge the board of water commissioners with the duty of taking charge and supervision of the system after it is provided. This is indicated, also, by the fact that in chapter 1 aforesaid, relating to the water development department, section 7 creates a "water development fund," which is to consist of "not less than twenty-five per centum of the gross receipts derived from the sale of water by the city of San Diego, and of such other moneys as may be transferred into said fund. Said fund shall be used for the management, maintenance, and development of the water development system." This obviously refers to a water development system already constructed, and it indicates that the board of water commissioners is to use one-fourth of the revenue from the sale of water obtained by it in its supervision of the system, for the upkeep and further development of the system, so far as may be possible with said fund. The matter of transferring other money to said fund is, by other provisions of the charter, left wholly within the power of the common council. Consequently, no portion of the fund can be transferred to the water development fund unless the council shall so determine. All this furnishes additional reason for hold-

ing that the power to construct the works and control the expenditure of the money therefor is lodged in the council.

[3]   Another provision of the charter (secs. 12 and 13, c. 2, art. VI) provides that the common council must not contract debts or liabilities exceeding the income and revenue for any year without the assent of two-thirds of the qualified voters of the city voting at an election on the subject, and that the proceedings taken for raising the money "shall be in accordance with the provisions of the general law in force at the time such proceedings are taken." Section 12 also provides that the council must not contract a debt in excess of the above limit except after the election therein specified, and that in incurring such indebtedness the council must "proceed in accordance with the general law" in force at the time.   These provisions do not, in our opinion, apply to a liability or indebtedness incurred in entering into a contract for the construction of the works to be constructed with the bond money, but refers to the liability incurred by the issuance and sale of the bonds and the procurement of the money to be used in the erection of the works; that is, the liability for such bonded indebtedness.   None of these provisions takes away or affects the power given to the common council by the charter provisions first above mentioned.   The conclusion is that the power in question is not in the board of water commissioners but is vested in the common council.

The judgment is reversed.

Sloane, J., Shurtleff, J., Lennon, J., and Lawlor, J., concurred.