[Civ. No. 6332. Fourth Dist. Nov. 22, 1960.]

FRED A. WILSON, Appellant, v. CITY OF SAN BERNARDINO et al., Respondents.

Fred A. Wilson, in pro. per., for Appellant.

Ralph A. Prince, City Attorney, James L. King, Surr & Hellyer and John B. Surr for Respondents.

GRIFFIN, P. J.—In this action by plaintiff and appellant, in propria persona, and as a taxpayer, for declaratory relief under Code of Civil Procedure, section 1060, against defendants and respondents City of San Bernardino, a municipal corporation (hereinafter referred to as "City"), and San Bernardino Valley Municipal Water District (hereinafter referred to as "District"), he seeks a declaration that the City is not a part of said defendant District, as the result

of an election called by the board of supervisors and held under the provisions of the Municipal Water District Act of 1911 (Stats. 1911, p. 1290, as amended; Deering's Gen. Laws, Act 5243), wherein the unincorporated area in the valley surrounding and including the cities of San Bernardino, Redlands and Colton was involved, to declare plaintiff's and other taxpayers' rights and duties in respect thereto; to perpetually restrain said District from levying or assessing any taxes or imposing liens on any property situated in the city of San Bernardino.

The evidence established, and the court found generally, that the City was a municipal corporation, operating under a charter approved by the Legislature on February 8, 1905 (Stats. 1905, p. 940), and as amended in May, 1921, adding to article 1, section 1, thereof the following clause:

"The City of San Bernardino may make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in this Charter, and in respect to other matters it shall be subject to general laws" (see Stats. 1921, p. 2242); that on October 27, 1953, the board of supervisors passed a resolution calling a special election, within that portion of San Bernardino County therein described, for the purpose of submitting to the electors of said portion of said county the following proposition: "Shall the proposition to organize San Bernardino Valley Municipal Water District under the Municipal Water District Act of 1911 be adopted?"; and that at said election the board passed a resolution declaring that 12,400 votes were cast for the proposition and 11,391 votes against its adoption; that on February 17, 1954, the Secretary of State issued a certificate that said portion of said county was duly incorporated as a municipal water district, and since the issuance of said certificate it and the directors thereof have exercised the powers conferred by said Act and levied a tax of $.06 upon each one hundred dollars of the assessed value of the real property described therein.

It appears that in designating the election precincts, unincorporated lands surrounding the city of San Bernardino were consolidated with and included with city election precincts and as a result it was impossible to determine from the returns how many votes from within the city were for or against the proposition. Although the votes of the few surrounding precincts (total of 203), when considered with the vote cast in the city, lacked 63 votes of constituting a

majority in favor of the proposition, the total vote cast in the entire district showed a majority of votes in favor of the proposition.

The court found that the number of votes cast in the city of San Bernardino in favor of said proposition was unknown, but, based on the certificate of incorporation and the presumption of regularity arising therefrom, the court found that the majority of the electors within the city of San Bernardino did vote in favor of the proposition and thereby consented to the proposition that said City be included within said District. It further found that this proceeding was not commenced within three months from the date of the certificate of the Secretary of State and accordingly this action is barred by the provisions of section 11 of the Municipal Water District Act of 1911 as amended; that a proceeding in quo warranto was the required action to be taken to test the questions here raised and that the attorney general has never consented to bringing this action; that the formation of the District here involved was not a *municipal affair* of the City. Judgment was entered denying plaintiff relief.

Plaintiff contends on this appeal that defendant City, being a charter city, had "*exclusive powers* over its 'municipal affairs' " and such power is " ' free from any interference by the State through general laws.' " (Citing such authority as *City of Glendale* v. *Trondsen,* 48 Cal.2d 93, 98 [308 P.2d 1] ; *West Coast Advertising Co.* v. *City & County of San Francisco,* 14 Cal.2d 516, 521 [95 P.2d 138] ; *City of Pasadena* v. *Charleville,* 215 Cal. 384, 389 [10 P.2d 745] ; *South Pasadena* v. *Pasadena Land & Water Co.,* 152 Cal. 579 [93 P. 490] ; 34 Cal.Jur.2d 752; Cal. Const., art. XI, § 8, subd. (g).) He therefore argues that since the *exclusive power* over its water supply is vested in the City, and the court did not and could not determine that that power had been exercised affirmatively, i.e., that a majority of the electors of the City had voted in favor of the formation of the District, it necessarily follows that the City has not been included in the District.

The main question is whether the formation and operation of the District, as formed, constituted a "municipal affair" within the meaning of California Constitution, article XI, sections 6, 8.

In *City of Pasadena* v. *Chamberlain,* 204 Cal. 653 [269 P. 630], a somewhat similar question was presented. There

the proceeding was one by the city of Pasadena to compel the city clerk to certify to the passage and to transmit a copy of an ordinance adopted under the terms of the Metropolitan Water District Act by the city of Pasadena for formation of the Metropolitan Water District of Southern California. Under the act, the formation of the district had been initiated by resolution of the city of Los Angeles, and the ordinance by the city of Pasadena was one approving of the formation of the district. Pasadena then was a charter city. At pages 659, 660 of the decision, it was argued by the defendant clerk that to permit the initiating municipality to impose duties upon other municipalities, or to vest them with powers in the course of the formation of the district which were not within the duties and powers of such other cities as set out in their respective charters would be invalid as violating article XI, section 6, of the Constitution, which expressly delegates to chartered cities the right to make and enforce all laws and regulations in respect to their own municipal affairs. In disposing of this point, the court said:

"This contention raises the question as to whether the general purpose to be subserved by the organization of the metropolitan water district through the co-operation of several municipalities, as contemplated in the terms of said act, is or is not a municipal affair. It may be admitted that, generally speaking, the distribution of water within municipalities would be as to each of such municipalities a municipal affair, but it would be entirely too narrow an interpretation of the purposes and scope of the Metropolitan Water District Act to hold that, because the distribution of water for domestic use in each of a number of the municipalities within a designated area is a municipal affair, the formation of a common purpose for the acquisition of water in large quantities from sources outside of such municipalities, and even outside of the area within which they exist, and the distribution of such water, when so acquired, among such cities, in accordance with a common plan, and with a view to achieving equitability in the distribution and use of such water, would in any sense be, as to each or any of such combined municipalities, a municipal affair. The impossibility or impracticability of any one or more of such municipalities acting separately and independently in the acquisition and distribution of such water would seem to argue conclusively that in achieving such object by the means provided for in said act the

municipalities engaged therein could not be held to be engaged in the conduct of a merely municipal affair.''

It is true that the Metropolitan Water District Act contains the provision that after the initial action is taken, the question of whether or not the residents and electors of each and all of the municipalities within the proposed area shall approve or disapprove the action thus taken is to be committed in each separate municipality to a *special election* and as to each the Act is not to be further operative until a *majority* of the electors shall at such special election approve the initiatory proceedings which have thus far been taken.

We do not believe that in the absence of such a provision in the act, it was intended that a different conclusion would have been reached. This same reasoning was applied in *Henshaw* v. *Foster,* 176 Cal. 507 [169 P. 82]. That decision involved a municipal water district organized under the same act as the San Bernardino Valley Municipal Water District. In that matter, plaintiffs, owners of land in San Diego County, sued to enjoin the board of supervisors of that county from calling an election to determine whether the ''San Diego Municipal Water District'' should be formed. The proposed district embraced the charter city of San Diego, as well as other cities and unincorporated territory. The plaintiffs in the Henshaw case relied on article XI, section 19, of the Constitution (allowing cities to operate water systems, etc.) and article XI, sections 12 and 13 (prohibiting taxes for municipal purposes except by cities), and also relied upon an alleged lack of effective hearing as to boundaries to enjoin the proposed election. The court overruled the contentions of the plaintiffs and held that the election should proceed. In disposing of plaintiffs' contention that the service of water was a ''municipal affair,'' the court said at page 511:

''In the case at bar the reason for a like conclusion with reference to municipal water districts is much stronger, because in the statute providing for their creation and operation we discover the legislative design of permitting the formation of districts for the convenient and economical development of a water supply within an area physically appropriate for such purpose without unduly restricting the powers of the inhabitants and their privileges by reason of the existence of smaller political entities situated within the greater tract and possessing powers somewhat similar to those secured for the corporation embracing the larger territory. The purpose is beneficent. By the law and under its sanctions the

people of one or more municipalities, with the adjacent territory, may unite for the joint benefit of all forming a municipal corporation through which they may accomplish that which it would be impossible for any one of the constituent municipal or suburban units to perform. Unless grave constitutional reasons impel this court to the contrary, such an act will be upheld.''

The court then proceeded to examine the question of whether levy of taxes by the municipal water district would constitute taxation for a municipal purpose within the prohibition of sections 12 and 13 of article XI of the Constitution. In deciding that the municipal water district tax was not for a ''municipal purpose,'' the court stated, at page 512:

''But, as we have seen, that article applies not merely to cities and towns, but to all municipal corporations, and power to acquire and sell water may be given to municipalities larger in territory and including within themselves cities and towns or similar corporations. This is done in the statute before us not in opposition to section 12, but by general provisions which vest in the corporate authorities of the district the power to assess and collect special taxes for the purposes contemplated. The corporate authority of such a district is the board of directors, and to that board is delegated the taxing power not in relation to matters of a purely local character in the included city or cities, but having reference to the affairs of the larger municipality embracing within it the others of lesser areas. In this view of the statute there is no violation of section 13, because the legislature does not delegate to the directors control or supervision of any of the purely local affairs of the cities, but by general law enables the inhabitants of a region, including cities, to form a district and to elect their own taxing board to raise the necessary funds for district purposes.'' (See also *Santa Barbara etc. Agency* v. *All Persons,* 47 Cal.2d 699 [306 P.2d 875].)

There are cases, as pointed out by plaintiff, where the supplying of water by a city to its inhabitants is strictly a ''municipal affair.'' There is also authority that by the adoption of city charter, the city of San Bernardino would be removed from the control of enactments of the Legislature insofar as its charter makes provision for the conduct of municipal affairs, but that with respect to matters not municipal, or with respect to municipal affairs upon which the charter is silent, the provisions of the state law pertaining thereto as adopted by the State Legislature will control the

subject matter. These general statements of our law are set forth fully by the Supreme Court in the case of *City of Pasadena* v. *Charleville, supra,* 215 Cal. 384, cited by plaintiff. However, courts at a very early date began to make a distinction between "municipal affairs" carried on by a city and similar affairs delegated to a larger area which included a city. As early as 1891, in the case of *In re Madera Irrigation District,* 92 Cal. 296, 343-344 [28 P. 272, 675, 27 Am. St.Rep. 106, 14 L.R.A. 755], the Supreme Court said:

"The fact that the town of Madera is included within the boundaries of the Madera Irrigation District neither renders the act unconstitutional nor invalidates the organization of the district. . . . The object of the act is the improvement of the district as an entirety, and the extent of the district, as well as the lands to be included therein, has been left to be determined by the discretion of the board of supervisors. . . . Neither is it in violation of the constitution to incorporate into such district a town or city that has been incorporated for other municipal purposes."

*Pixley* v. *Saunders,* 168 Cal. 152, 160 [141 P. 815], involved a sanitation district. The court there held that it was largely a matter of legislative intent as to whether a public district might embrace both incorporated and unincorporated territory, and it was often necessary for a city, in the exercise of its "municipal affairs," to be a part of an area larger than the boundaries of the city. The court said:

" 'The condition above described leads inevitably to the conclusion that while generally the question of sanitation is a municipal affair, in many instances it is one of broader scope, which cannot be adequately handled by the municipal authorities of a single town. Therefore it cannot be said to be a "local" or "municipal" affair within the inhibition of sections 12 and 13 of the constitution above quoted, and it falls within the class of public purposes such as irrigation and reclamation, for which the legislature has the undoubted authority to provide governmental agencies or districts by general laws. . . . For the reasons above stated, it is the conclusion of the court that in enacting the Sanitary District Acts, the legislature had in mind the sanitation of any territory which might conveniently be served by a single system, whether wholly unincorporated or not, and that a sanitary district formed under said act preserves its identity and retains its powers over the whole territory, except in the event of its complete absorption by a municipality.' "

To the same effect is *La Mesa Homes Co.* v. *La Mesa etc. Irrigation District*, 173 Cal. 121 [159 P. 593], involving an irrigation district. (See also *Stuckenbruck* v. *Board of Supervisors*, 193 Cal. 506 [225 P. 857]; *Galt County Water Dist.* v. *Evans*, 10 Cal.App.2d 116 [51 P.2d 202]; *Dickson* v. *City of Carlsbad*, 119 Cal.App.2d 809 [260 P.2d 226]; *Oakdale Irr. Dist.* v. *County of Calaveras*, 133 Cal.App.2d 127 [283 P.2d 732].)

█ It would therefore clearly appear that when a general law of the state, adopted by the state Legislature, provides for a scheme of public improvement, the scope of which intrudes upon or transcends the boundary of one or several municipalities, together with unincorporated territory, such contemplated improvement ceases to be a municipal affair and comes within the proper domain and regulation of the general laws of the state.

Furthermore, the finding that quo warranto proceedings under Code of Civil Procedure, section 803, is the sole remedy to test many of the questions here attempted to be raised has support. █ In 41 Cal.Jur.2d 614, section 5, it is said:

"The statutory proceeding in the nature of quo warranto generally affords the exclusive remedy as to matters coming within its scope. Thus, a proceeding in quo warranto by or on behalf of the state is the exclusive remedy for challenging the due incorporation . . . or . . . for attacking the regularity of the organization of a municipal or other public corporation such as a reclamation, irrigation, or protection district. . . ."

█ It is further said, on page 623, section 11: "Thus, the remedy lies to annul the existence of a municipal corporation that has not substantially complied with the law relative to its incorporation, or is organized under an unconstitutional law. An action for that purpose cannot be brought by an individual taxpayer, but only by the attorney general." (See also *Reclamation District No. 765* v. *McPhee*, 13 Cal.App. 382-383 [109 P. 1106]; *Keech* v. *Joplin*, 157 Cal. 1 [106 P. 222].)

Section 11 of the Municipal Water District Act provides: "No informality in any proceeding or informality in the conduct of any election, not substantially affecting adversely the legal rights of any citizen, shall be held to invalidate the incorporation of any municipal water district, and any proceedings, wherein the validity of such incorporation is denied, shall be commenced within three months from the date of the certificate of incorporation, otherwise said incorporation and

the legal existence of said municipal water district and all proceedings in respect thereto shall be held to be valid and in every respect legal and incontestable.''

Plaintiff argues that this is not a statute of limitations but a curative act and does not apply to questions of jurisdiction or the validity of the incorporation, and contends that the city of San Bernardino is not embraced within such incorporation.

The general attack here made and the conclusions here reached clearly indicate that the City was included within such incorporation and no sufficient jurisdictional question is raised. This provision appears to be applicable.

In view of these conclusions, the other points presented are unnecessary to this opinion.

Judgment affirmed.

Shepard, J., and McMurray, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 18, 1961.

*Assigned by Chairman of Judicial Council.