[L. A. No. 26395. In Bank. Oct. 26, 1961.]

SAN YSIDRO IRRIGATION DISTRICT et al., Petitioners, v. THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent; THE CITY OF SAN DIEGO, Real Party in Interest.

Kaminar, Sorbo, Andreen, Thorn & Gallagher and Robert Thorn for Petitioners.

Henry A. Dietz, County Counsel, and Joseph Kase, Jr., Deputy, for Respondent.

Alan M. Firestone and J. F. DuPaul, City Attorneys, for Real Party in Interest.

DOOLING, J.—Petitioners seek a peremptory writ of prohibition restraining respondent superior court from taking any further proceedings in a pending action instituted by the city of San Diego against petitioners.

The San Ysidro Irrigation District (hereinafter referred to as the district) was duly chartered in 1911 under the Irrigation District Law of the State of California (now Wat. Code, §§ 20500-29978) and at all times since, the district has been the sole supplier of water to a heretofore unincorporated area known as the City of San Ysidro. On September 13, 1957, the City of San Diego (hereinafter referred to as the city) annexed all of the territory lying within the boundaries of the district. This was the "South Bay Annexation," the validity of which was unsuccessfully challenged before the Supreme Court of the United States (*Hazelton* v. *City of San Diego* (July 25, 1960) 183 Cal.App.2d 131 [6 Cal.Rptr. 723]; cert. den. 366 U.S. 910 [81 S.Ct. 1084, 6 L.Ed.2d 235]). At no time since the annexation has the city attempted to furnish water to the inhabitants within the boundaries of the district.

In January 1961 the city brought an action for declaratory relief against the district and its board of directors for an adjudication that the district was dissolved by operation of law on September 13, 1957, when the district was annexed to the city. The city also sought in the action a preliminary and a permanent injunction enjoining the district and its directors from entering into any contracts for the construction of any new water lines and facilities and from disposing of any

assets of the district. The city's complaint alleged that the district does not have an adequate supply of water and that such supply of water as is available to the district is not of the quality required by state laws and regulations. It further alleged that the city has requested the district's board of directors to turn over the facilities and assets of the district to the city so that the city could serve the inhabitants of the district with an adequate supply of water but this request has been refused; that the inhabitants and property owners of the district are suffering irreparable damage by reason of the service of "inadequate and unpotable water" by the district; and that the city will suffer irreparable damage if the district is permitted to continue its usurpation of the city's functions. It also alleged that the district threatened to and would, unless enjoined, construct substandard water facilities within the district's boundaries, and so within the city's boundaries.

A temporary restraining order was issued against the district and its directors enjoining them from constructing water facilities and from disposing of the district's cash and assets pending a further hearing on an order to show cause as to why a preliminary injunction to the same effect should not be issued. The city next amended its complaint to bring in as a party defendant a company which had designed and agreed to construct a filtration plant for the district; and a further temporary restraining order was issued prohibiting the company's proposed plant construction.

The district and its directors then moved for dismissal of the proceedings for lack of jurisdiction, filing the following documents: (1) a motion to strike the complaint upon the ground that the court was without jurisdiction in the matter, under sections 23202 and 27401 of the Water Code, requiring the assent of the Secretary of the Interior to the dissolution of any irrigation district having a contract with the United States for the delivery of water; the supporting affidavit stated that the required assent had not been given and named three governmental agencies for which the district was obligated to supply water; (2) a demurrer on the ground of lack of capacity to sue and failure to state a cause of action in that quo warranto was the exclusive means to test the validity of the existence of the district and its board of directors, and (3) a motion to dissolve the temporary restraining order on the ground that the court lacked jurisdiction to enjoin the legislative and administrative acts of public officers until it was judicially determined that the district had been

dissolved. After hearing on February 9, 1961, the court denied the district's motions and overruled the demurrer; and granted the city's request for a preliminary injunction. Thereupon the district and its directors petitioned for this writ of prohibition, claiming that unless restrained by this court, respondent court will proceed to trial on the case on its merits and enforce the preliminary injunction to petitioners' irrevocable injury.

The main question in dispute is whether quo warranto is the exclusive remedy for attacking the validity of the existence of an irrigation district, as petitioners maintain, or whether a declaratory relief action is likewise available as a proper method of determining the legal existence of the district, as the city maintains. Declaratory relief has been granted in two cases where the plaintiff sought an adjudication as to whether a public district was dissolved by operation of law when the territory embraced by the boundaries of the district was entirely included within an incorporated city. (*City of Escalon* v. *Escalon Sanitary Dist.* (1960) 179 Cal.App.2d 475 [3 Cal.Rptr. 889]; *Dickson* v. *City of Carlsbad* (1953) 119 Cal.App.2d 809 [260 P.2d 226].) In the *Dickson* case the court cited the well-settled rule that "there cannot be at the same time, within the same territory, two distinct municipal corporations exercising the same powers, jurisdiction and privileges" and accordingly "where one municipal corporation is annexed to another the annexing city takes over the functions of the annexed municipality, and the latter by virtue of the annexation is extinguished and its property, powers, and duties are vested in the corporation of which it has become a part." (119 Cal.App.2d at p. 812; see also *Allied Amusement Co.* v. *Bryam*, 201 Cal. 316, 320 [256 P. 1097]; *In re Sanitary Board of East Fruitvale Sanitary Dist.*, 158 Cal. 453, 457 [111 P. 368].) The *Escalon* case cited and quoted from *Dickson*, 179 Cal.App.2d at pages 478-480, as decisive. Neither the *Dickson* nor *Escalon* case discusses the matter of quo warranto.

Petitioners argue that quo warranto is the exclusive remedy (Code Civ. Proc., § 803; 41 Cal.Jur.2d, Quo Warranto, § 5, p. 614; § 12, p. 624), citing *Keech* v. *Joplin* (1909) 157 Cal. 1, 14 [106 P. 222]; *Wilson* v. *City of San Bernardino* (1960) 186 Cal.App.2d 603, 611 [9 Cal.Rptr. 431]; *Coe* v. *City of Los Angeles* (1919) 42 Cal.App. 479, 481 [183 P. 822]; *Jaques* v. *Board of Supervisors* (1914) 24 Cal.App. 381, 385 [141 P. 404]; and *Metcalfe* v. *Merritt* (1910) 14 Cal.App. 244, 247

[111 P. 505]; that the existence of a public corporation cannot be questioned in a collateral proceeding by private individuals (*Reclamation District No. 542* v. *Turner* (1894) 104 Cal. 334, 335 [37 P. 1038]; *Quint* v. *Hoffman* (1894) 103 Cal. 506, 507 [37 P. 514, 777]) but only in a proceeding in quo warranto at the suit of the state. With the exception of the *Wilson* case, all the cases cited by petitioners were decided prior to the adoption of the declaratory relief statute in 1921. (Code Civ. Proc., §§ 1060 et seq.) In the *Wilson* case plaintiff as a taxpayer brought an action for declaratory relief against a city and a water district, seeking a declaration that the city was not a part of the district as the result of an election. He also sought an adjudication as to his and other taxpayers' rights and duties, and to have the district restrained from levying or assessing taxes on property within the city. The trial court found that ''a proceeding in quo warranto was the required action to be taken to test the questions here raised and that the attorney general has never consented to bringing this action,'' and '' [j]udgment was entered denying plaintiff relief.'' (186 Cal.App.2d at p. 606.) The District Court of Appeal approved this finding, citing 41 California Jurisprudence 2d 614, section 5, where it is said that the ''statutory proceeding in the nature of quo warranto generally affords the exclusive remedy as to matters coming within its scope'' and thus ''a proceeding in quo warranto by or on behalf of the state is the exclusive remedy for challenging the due incorporation . . . or . . . for attacking the regularity of the organization of a municipal or other public corporation such as a reclamation, irrigation, or protection district. . . .''

Petitioners also cite an opinion of the Attorney General wherein the City of Downey requested permission from the Attorney General to bring an action in quo warranto to test the validity of the existence of the Downey County Water District, the city claiming that the district ''became merged with the city'' and ''by reason of such merger became dissolved.'' (35 Ops. Cal. Atty. Gen. 214.) Apparently in the Attorney General's opinion, as is petitioners' contention, a municipal corporation has no status different from a ''private person'' in testing the validity of the existence of another political subdivision and so is subject to Code of Civil Procedure, section 803. However, while the Attorney General held that quo warranto was proper, he did not indicate that it was the sole remedy.

''In the absence of constitutional or statutory regu-

lations providing otherwise, quo warranto proceedings are the only proper remedy in cases in which they are available . . . for example . . . the sole and exclusive remedy by which the legality of the existence and organization of a corporation . . . private . . . municipal . . . or other public corporation . . . irrigation . . . district may be questioned and attacked. . . ." (74 C.J.S., Quo Warranto, § 4, pp. 179-181; also 44 Am.Jur., Quo Warranto, § 8, p. 94; *Walling* v. *Iowa Mutual Liability Ins. Co.*, 228 Iowa 503 [292 N.W. 157]; *Coulter* v. *Reese*, 261 Ala. 660 [75 So.2d 608]; *La Salle County Water Dist. No. 1* v. *Guinn* (Tex.Civ.App.) 40 S.W.2d 892; *State ex rel. Wallen* v. *Miller*, 202 Tenn. 498 [304 S.W.2d 654].)

██ The underlying theory is that municipal corporations "are delegated agencies of the state government and their existence as such should not be subject to indirect attack at the caprice of private interests, but should be open to question only in a direct proceeding in the interest of the public." (44 Am.Jur., Quo Warranto, § 51, p. 123; *Crowl* v. *Board of Trustees*, 109 Cal.App. 214, 216-217 [292 P. 985].) It has been said that the declaratory judgment law does not change the situation and was not intended to strike down the public policy involved in the quo warranto statute. (Note 18 A.L.R. 2d 1255, 1279-1280; *cf. Birmingham Bar Assn.* v. *Phillips & Marsh*, 239 Ala. 650 [196 So. 725, 732].)

The existing authorities in California support the view that declaratory relief would not be available to a party in these circumstances which could not maintain a quo warranto action in its own name.

██ "It has been held repeatedly that actions for declaratory relief involve matters of practice and procedure only and are not intended in any way to enlarge the jurisdiction of courts over parties and subject-matter. . . . Such statutes are intended to provide an additional procedure for utilizing the existing jurisdiction of the courts." (*Hoyt* v. *Board of Civil Service Commrs.*, 21 Cal.2d 399, 403 [132 P.2d 804]; also 15 Cal.Jur.2d 105, § 6; *Carrier* v. *Robbins*, 112 Cal.App. 2d 32, 36 [245 P.2d 676]; *Independent Laundry* v. *Railroad Com.*, 70 Cal.App.2d 816, 821 [161 P.2d 827]; *Imperial Mut. L. Ins. Co.* v. *Caminetti*, 59 Cal.App.2d 501, 505 [139 P.2d 691].) ██ Under section 803 of the Code of Civil Procedure, respondent court would not have jurisdiction of an action attacking the validity of the district unless brought by the Attorney General at the instance of the city; and there-

fore the present declaratory relief action would not be proper under that section.

However, section 811 of the Code of Civil Procedure, enacted in 1937 (Stats. 1937, p. 1617), grants to the legislative body of any municipal corporation the right to maintain quo warranto without the interposition of the Attorney General in the cases therein specified. It reads: "The action provided for in this chapter may be maintained by the board of supervisors of any county or city and county or the legislative body of any municipal corporation, respectively, in the name of such county, city and county or municipal corporation against any person who usurps, intrudes into or unlawfully holds or exercises any franchise, or portion thereof, within the respective territorial limits of such county, city and county or municipal corporation and which is of a kind that is within the jurisdiction of such board or body to grant or withhold." Comment is made on the purport of this section in 11 Southern California Law Review, page 51: "While Section 811 refers only to a 'person' usurping such a franchise, this also includes a corporation under the provisions of Section 17 of the Code of Civil Procedure.

"Evidently either the Attorney General of the State under Section 803, or the appropriate body mentioned in Section 811, now may maintain any action coming within the provisions of the latter section (that is, usurpation of a franchise as distinguished from the usurpation of an office). The provisions of Section 811 apparently are desirable for two reasons: (1) They permit such actions to be maintained by local bodies, which usually have a very direct and immediate interest in preventing the usurpation of such franchise; (2) The Attorney General may be relieved of the necessity of maintaining such an action if the local body proceeds to do so."

See also *City of Oakland* v. *Hogan* (1940) 41 Cal.App.2d 333, where it was said at pages 344-345 [106 P.2d 987]: "Section 811 of the Code of Civil Procedure gives the right to a board of supervisors or the legislative body of a municipal corporation, in the name of the county or in the name of the municipality, to bring an action in *quo warranto* for unlawful holding etc. [of a wharf operated by certain individuals] within the territorial limits of the county [or] municipal corporation . . . without the presence of the attorney-general appearing 'in the name of the people of this state.' "

While section 811 applies in terms to proceedings "against any *person* who usurps. . . ," the word "person" may in

proper cases include governmental bodies. So in *State* v. *Marin Mun. Water Dist.*, 17 Cal.2d 699 [111 P.2d 651], it was held that the word "person" in Streets and Highways Code, section 680, authorizing the Department of Public Works to require the removal of structures on state highways, embraces a municipal water district. See also *Hoyt* v. *Board of Civil Service Commrs.*, *supra*, 21 Cal.2d at page 402.

██ If the city is authorized to maintain quo warranto in its own name against the district, then it would not enlarge the jurisdiction of respondent court over the parties to permit it to maintain an action for declaratory relief.

██ Petitioners argue that since the district is a public agency created under legislative authority, it cannot properly be said to be exercising a "franchise . . . which is of a kind that is within the jurisdiction of such board or body [the legislative body of the city] to grant or withhold." However, the district is exercising a franchise for the distribution of water within the territory which it serves, and that territory is now entirely within the territorial limits of the city. Petitioners admit in their supplemental brief that "local legislative bodies may grant franchises for public utilities which are within the jurisdiction of the particular city and which are desired as a means of providing services to the inhabitants of that city." While the city cannot create an irrigation district such as petitioner district, the district is exercising a franchise within the territorial limits of such city for the distribution of water, and the franchise so exercised is "of a kind that is within [its] jurisdiction . . . to grant or withhold." ██ Since the franchise exercised by the district falls within the express terms of section 811, no good reason appears why the city might not proceed by quo warranto under that section against the district to establish that it now "unlawfully holds or exercises" that franchise. This being so, declaratory relief is equally available to it since the maintenance of the action for declaratory relief does not "in any way . . . enlarge the jurisdiction of courts over parties and subject-matter." (*Hoyt* v. *Board of Civil Service Commrs.*, *supra*, 21 Cal.2d 399, at p. 403.)

██ Petitioners also argue that the declaratory relief action brought by the city can result in a multiplicity of suits and will not result in a final determination of the district's existence. Petitioners assert that even if the city lost the present case, the district's existence could be later attacked by the Attorney General in quo warranto or in innumerable

718

actions for declaratory relief by private citizens. Since, however, the city is expressly authorized by section 811 to maintain quo warranto in this case, the judgment which is obtained herein will be a final and conclusive one on all parties.

 Petitioners also attack the jurisdiction of respondent court to act in this action because the assent of the Secretary of the Interior was not first obtained. (Wat. Code, §§ 23202, 27401.) Under contract with the United States, petitioners have been the sole supplier of water to three governmental installations: the U.S. Border Station at San Ysidro, the U.S. Customs Agency Service Garage at San Ysidro, and U.S. Navy facilities at the border near San Ysidro.

Section 23202 provides: "When a contract pursuant to this chapter has been entered into between the United States and any district, the district shall not be dissolved, nor shall its boundaries be changed, except upon written consent of the Secretary of the Interior filed with the official records of the district. If consent is given and land is excluded, the areas excluded shall be free from all liens and charges for payments to become due to the United States."

Section 27401 provides: "When a contract authorized by law has been made between a district and the United States for the construction and operation of necessary works for the delivery of water or for a water supply, the district shall not be dissolved and no proceedings had in any court or otherwise for the dissolution of the district until the written assent of the Secretary of the Interior is given to the dissolution."

Neither of these statutes appears to have any bearing on petitioners' jurisdictional attack. Section 23202 does not specify that the assent of the Secretary of the Interior is a condition precedent to the bringing of suit nor affect the jurisdiction of the trial court. Whatever effect this section might have would arise in the trial in the determination of whether the district was dissolved in consequence of annexation to the city. Moreover, section 23202 is part of chapter 2 of division 11, part 6, of the Water Code involving the joint cooperation of the United States with districts in the delivery and distribution of water to districts under relevant acts of Congress. Provision is made for approval of contracts with the United States by an election (§§ 23220-23224); for assessments within the district to pay the United States according to the contract between the United States and the district (§§ 23240-23245); and for the borrowing of money by the district from the United States to finance the construction of

facilities within the district (§ 23263). Reasonably construed, it would seem that this chapter 2 of the Water Code (including § 23202) refers to contracts with the United States concerning major construction projects rather than relatively minor contracts for the district's supply of water to small governmental installations as here involved near the border of San Ysidro. To construe this chapter 2 otherwise would result in endless applications for the prior consent of the Secretary of the Interior before any action for dissolution or enlargement of a district could be brought, though the contract be only one relating to a water supply for a federal post office or other commonly found governmental agency in a district. Such purpose would not coincide with a practical interpretation of the Legislature's intent in enacting these statutory provisions.

 Section 27401 is part of chapter 4 of division 11, part 11, of the Water Code dealing with the voluntary dissolution of irrigation districts. Provision is made whereby landowners in the district may petition for the dissolution thereof (§§ 27402-27405); for dissolution elections (§§ 27440-27447); for validation in the superior court (§§ 27465-27473) and for other proceedings looking toward the orderly voluntary dissolution of the district. Moreover, section 27401 also does not appear to apply to the type of water contract here involved between the district and the United States affecting three governmental border installations, for the pertinent portion of the section is so worded as to relate to contracts whereby the United States undertakes to construct and operate "necessary works for the delivery of water or for a water supply" to the district.

Petitioners finally contend that the temporary restraining order, which has now become a preliminary injunction, was in excess of respondent court's jurisdiction as it prohibits substantially all legislative functions of the district's directors. They cite *Nickerson* v. *County of San Bernardino,* 179 Cal. 518, 522 [177 P. 465]; *Glide* v. *Superior Court,* 147 Cal. 21, 24 [81 P. 225]; and *French* v. *Senate,* 146 Cal. 604 [80 P. 1031, 2 Ann.Cas. 756, 69 L.R.A. 556], holding that courts may not interfere with legislative or discretionary functions of a municipal body as distinguished from ministerial acts. But in the cited cases the acts of the particular board or legislative body involved were within the jurisdictional discretionary powers vested in the board as a functioning entity. These cases did not concern a situation where actions in excess of

jurisdiction of a municipal board may be enjoined. ▮ If the district was in fact dissolved by operation of law by annexation to the city, then all activities of the district's directors would be in excess of their jurisdiction. ▮ This principle of law is recognized in *Glide* v. *Superior Court, supra,* 147 Cal. 21, at page 23, where it is said: "Courts of equity do interfere, and are justified in their interference, in cases where municipal corporations or inferior boards or tribunals are acting, or proposing to act, in excess of their jurisdiction and without authority."

For the reasons herein stated the alternative writ is discharged and the petition is denied.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., and White, J., concurred.