[Civ. No. 6704. Fourth Dist. Feb. 23, 1962.]

THE CITY OF SAN DIEGO, Plaintiff and Respondent, v. OTAY MUNICIPAL WATER DISTRICT et al., Defendants and Appellants; JAN COX et al., Interveners and Appellants.

Jennings, Engstrand & Henrikson, Paul D. Engstrand, Jr., and John H. Whitney for Defendants and Appellants.

Alan M. Firestone, City Attorney, Robert J. Cooney, Special Deputy City Attorney, for Plaintiff and Respondent.

John S. Rhoades for Interveners and Appellants.

Phil D. Swing as Amicus Curiae on behalf of Interveners and Appellants.

COUGHLIN, J.—This is an action in declaratory relief by which the plaintiff and respondent, the City of San Diego, seeks to enjoin the defendants and appellants, Otay Municipal Water District and its officers, from operating a water system in and furnishing water to inhabitants of the City of San Diego; and by which three land owners, who intervened in the action, seek a determination declaring invalid the proceedings taken by the water district which resulted in the formation of an improvement district that included their property. The court enjoined the construction or operation of any water works by the defendant within the city's territory without its consent; enjoined the issuance of bonds for the construction or operation of such water works without the city's consent; but did not pass upon the issue raised by the interveners with respect to the validity of the improvement district which contemplated such construction and operation. The interveners also appeal from an order denying their motion for a new trial. The latter appeal should be dismissed as the order in question is not appealable. (Code Civ. Proc., § 963; *Reeves* v. *Reeves,* 34 Cal.2d 355 [209 P.2d 937].)

The plaintiff is a chartered city. The defendant water district was organized under the Municipal Water District Act of 1911. (Stats. 1911, ch. 671, pp. 1290 et seq.) There are approximately 60,000 acres within its boundaries. In 1957, 4,000 of these were annexed to the City of San Diego. In 1959, under proceedings provided by the statute, an improvement district was formed within the water district which covered 12,000 of these acres, including the 4,000 theretofore annexed to the City of San Diego, and the issuance of bonds

for the construction of a distribution system to furnish water to the land within the improvement district was authorized. At the time in question the territory within the boundaries of the latter district was sparsely populated; was not furnished water either by the City or the water district; and the land therein was substantially undeveloped, although a portion thereof was used for dry farming.

Shortly after formation of the improvement district the City brought this action to prevent the water district from furnishing water to the inhabitants of the annexed area and from constructing a water distribution system within that area for that purpose, contending that these functions are municipal affairs over which it has exclusive control by virtue of the state Constitution and the provisions of its charter, and that the water district might not engage therein without its consent.

The constitutional sections relied upon provide: (1) that "Any municipal corporation may establish and operate public works for supplying its inhabitants with . . . water. . . ." (Cal. Const., art. XI, § 19) and, (2) that cities organized under charters are empowered "to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters. . . ." (Cal. Const., art. XI, § 6).

The charter provisions in question are contained in sections 1 and 103.1 of the charter and declare that the city ". . . may own and operate public utility systems, including the joint or sole operation and ownership of utilities for the purchase, development, and supply of water . . . for the use of the City and its inhabitants. . . ." (Stats. 1931, ch. 47, p. 2840, § 1), and that

"No person, firm or corporation shall establish and operate works for supplying the inhabitants of The City of San Diego with . . . water . . ., or establish and carry on any business within said City which is designed to or does furnish services of a public utility nature to the inhabitants of said City, without the consent of said City. . . ." (Stats. 1953, ch. 106, p. 4005.)

It now is settled that, absent any constitutional or statutory inhibition, the authority conferred by general law upon a public corporation to act within a prescribed area, does not terminate *per se* upon the annexation of a part of that area by a city possessing similar authority; that the issue

presented concerns the intent of the Legislature in the premises; and that the probability of a potential conflict between corporations possessing dual authority, of itself, does not establish an intent against its existence. (*Henshaw* v. *Foster*, 176 Cal. 507 [169 P. 82]; *LaMesa Homes Co.* v. *LaMesa etc. Irr. Dist.*, 173 Cal. 121 [159 P. 593]; *Pixley* v. *Saunders*, 168 Cal. 152 [141 P. 815].) The Municipal Water District Act of 1911 (Stats. 1911, ch. 671, pp. 1290 et seq.) contains no limitation upon the authority of a water district organized thereunder to furnish water to an incorporated area as well as to an unincorporated area. To the contrary, specific provisions in the Act are directed to situations wherein both such areas are included within such a water district. (See Stats. 1911, ch. 671, and amendments thereto, §§ 2, 2.5, 12 (subd. 6), 27, 27.1, 28 and 33.)[1] In *State* v. *Marin Mun. Water Dist.*, 17 Cal.2d 699, 702 [111 P.2d 651], the court referred to a municipal water district as a "corporate body organized to supply water to a defined area *including both incorporated and unincorporated territory.*" (Italics ours.) On the other hand, although incorporated as well as unincorporated territory may be included in a municipal water district, the inclusion of a city within such a district, its annexation thereto, or its exclusion therefrom after formation, requires the inclusion, annexation or exclusion of the "entire corporate area." (Stats. 1911, ch. 671, and amendments thereto, §§ 2, 2.5, 27, 27.1, 27.2 and 27.3.) It would appear that the Legislature attempted to limit the exercise of the authority conferred upon a water district over territory included within a city to those instances where such authority applied to the "entire corporate area." The reason therefor is apparent, i.e., to obviate the necessity for the exercise of dual functions by the district and the city. The legislative intent thus appearing is none the less clear because, after establishment of the district's boundaries, the city might acquire territory not included therein. (See Stats. 1953, ch. 1882, § 2.) The latter situation involves circumstances over which the Legislature deemed it unwise to attempt to exercise control, and expressly declared its intention in the premises. The conclusions heretofore noted are pertinent to a determination of the legislative intent with respect to the situation at hand.

---

[1]The provisions of the Municipal Water District Act of 1911 are set forth in West's Annotated Water Code—Appendix, section 20 [Deering's Wat. Code, Act 5243].

 The Charter of the City of San Diego, as well as the act under which the defendant water district was organized (Stats. 1911, ch. 671, pp. 1290 et seq.) and the annexation statute by which the overlapping territory in question became a part of the City (Gov. Code, § 35100 et seq.) all are state laws. (*Whitmore* v. *Brown*, 207 Cal. 473, 481 [279 P. 447]; *Taylor* v. *Cole*, 201 Cal. 327, 333 [257 P. 40]; *Adams* v. *Wolff*, 84 Cal.App.2d 435, 440 [190 P.2d 665].) In determining the issue at hand, all pertinent statutes should be considered as parts of a whole system of law. (*Stafford* v. *Los Angeles etc. Retirement Board,* 42 Cal.2d 795, 799 [270 P.2d 12].) The charter provides that no person or corporation shall establish or operate works for supplying water to inhabitants of the City without the latter's consent. The Municipal Water District Act contains no provision foreclosing application of the foregoing charter provision to the defendant district. Of interest, and entitled to consideration, are the provisions of section 33 of the Water District Act that "[t]he inclusion in, or annexation or addition to, a municipal water district, of the corporate area of any public corporation or public agency, shall not . . . impair the powers of any such public corporation or public agency, notwithstanding the identity of purpose, . . . of such municipal water district." (Stats. 1955, ch. 1318, § 9.) There is no provision in the annexation statute which limits the right of a city to annex territory because it is part of an established district, nor precludes the application of the charter provisions of such city, similar to those under consideration in this case, to the territory annexed, although it is a matter of note that this statute does foreclose annexation of property which is part of another city (Gov. Code, § 35110), and also provides that the annexation of territory thereunder will not "affect, terminate or invalidate" certain proceedings therein designated. (Gov. Code, § 35156.)

 Considered as a whole, the statutory law on the subject supports the conclusion that the Legislature intended to limit the authority of a water district over territory annexed by a city, commensurate with any limitation expressed in the charter of the annexing city.

In *San Ysidro Irr. Dist.* v. *Superior Court,* 56 Cal.2d 708 [16 Cal.Rptr. 609, 365 P.2d 753], the Supreme Court, by a holding essential to its decision therein, authoritatively established the applicability of the charter provision in question to the situation at hand, and its effect upon the authority of the

water district. In that case, the City of San Diego sought declaratory relief with respect to the authority of an irrigation district to furnish water to the inhabitants of city annexed territory. ██ ██ Against a contention that the authority of the district could be questioned only through a proceeding in quo warranto, initiated by the attorney general, the court held that the City of San Diego was authorized to pursue the remedy it had undertaken, without the interposition of the attorney general, by virtue of the provisions of section 811 of the Code of Civil Procedure which authorized the legislative body of a municipal corporation to maintain such an action in its name ''against any person who usurps, intrudes into or unlawfully holds or exercises *any franchise,* or portion thereof, within the respective territorial limits of such . . . municipal corporation and *which is of a kind that is within the jurisdiction of such . . . body to grant or withhold.''* (Italics ours.) In substance, the court held that the term ''any person'' as used in section 811 includes governmental bodies; that the furnishing of water to inhabitants of the City of San Diego by the irrigation district constituted the exercise of a franchise; and that such franchise was of a kind that was within the jurisdiction of the city's legislative body to grant or withhold. With respect to the latter matters, the court said (p. 717):

''Petitioners [irrigation district] argue that since the district is a public agency created under legislative authority, it cannot properly be said to be exercising a 'franchise . . . which is of a kind that is within the jurisdiction of such board or body [the legislative body of the city] to grant or withhold.' However, the district is exercising a franchise for the distribution of water within the territory which it serves, and that territory is now entirely within the territorial limits of the city. Petitioners admit in their supplemental brief that 'local legislative bodies may grant franchises for public utilities which are within the jurisdiction of the particular city and which are desired as a means of providing services to the inhabitants of that city.' While the city cannot create an irrigation district such as petitioner district, the district is exercising a franchise within the territorial limits of such city for the distribution of water, and the franchise so exercised is 'of a kind that is within [its] jurisdiction . . . to grant or withhold.' Since the franchise exercised by the district falls within the express terms of section 811, no good reason ap-

pears why the city might not proceed by quo warranto under that section against the district to establish that it now 'unlawfully holds or exercises' that franchise.''

The authority of the city referred to in the cited case by which it could grant or withhold the exercise of the irrigation district's franchise to deliver water within the territorial limits of the former was that contained in section 103.1 of the charter, to which reference heretofore has been made. For the purpose at hand, no valid distinction exists between an irrigation district and a municipal water district. It thus appears that the aforesaid holding by the Supreme Court is determinative of the issue under consideration and supports the decision of the trial court in the premises.

The foregoing expressed conclusion renders unnecessary a decision upon the complex question whether the power of the water district to furnish water to the inhabitants thereof in furtherance of its general purpose, may not be exercised within that part of the district annexed to the city because of the constitutional provision, i.e., article XI, section 6, of the California Constitution, declaring that the powers of a charter city with respect to municipal affairs are subject only to the limitations and restrictions contained in its charter.[2]

---

[2]It has been held that the supplying of water by a city to its inhabitants is a municipal affair (*City of Pasadena* v. *Charleville*, 215 Cal. 384, 389 [10 P.2d 745]; *City of Pasadena* v. *Chamberlain*, 204 Cal. 653, 659 [269 P. 630]; *Heilbron* v. *Sumner*, 186 Cal. 648, 650-651 [200 P. 409]; *Loop Lumber Co.* v. *Van Loben Sels*, 173 Cal. 228, 232 [159 P. 600]; *South Pasadena* v. *Pasadena Land etc. Co.*, 152 Cal. 579, 594 [93 P. 490]; *Mefford* v. *City of Tulare*, 102 Cal.App.2d 919, 924 [228 P.2d 847]; *Williams* v. *City of Vallejo*, 36 Cal.App. 133, 139 [171 P. 834]), and the powers of a charter-city over its municipal affairs may not be restricted by the general law, except as the Constitution or its charter may provide. (*City of Glendale* v. *Trondsen*, 48 Cal.2d 93, 99 [308 P.2d 1]; *City of Grass Valley* v. *Walkinshaw*, 34 Cal.2d 595, 599 [212 P.2d 894]; *West Coast Adver. Co.* v. *San Francisco*, 14 Cal.2d 516, 522 [95 P.2d 138]; *Muehleisen* v. *Forward*, 4 Cal.2d 17, 19 [46 P.2d 969]; *Heilbron* v. *Sumner, supra*, 186 Cal. 648, 650.) On the other hand it also has been held that ''where the scope of a project transcends the boundaries of a municipality it ceases to be for a municipal purpose'' (*Santa Barbara etc. Agency* v. *All Persons*, 47 Cal.2d 699, 710 [306 P.2d 875]; *County of Los Angeles* v. *Hunt*, 198 Cal. 753, 774-775 [247 P. 897]; *Pixley* v. *Saunders, supra*, 168 Cal. 152, 160), and that, under this rule, the purpose and powers of a municipal and similar water districts embracing both incorporated and unincorporated areas within their boundaries do not constitute municipal affairs. (*City of Pasadena* v. *Chamberlain, supra*, 204 Cal. 653, 659; *LaMesa Homes Co.* v. *LaMesa etc. Irr. Dist., supra*, 173 Cal. 121, 125; *Wilson* v. *City of San Bernardino*, 186 Cal.App.2d 603 [9 Cal.Rptr. 431].)

In the case at bar, not only did the court determine that the water district may not deliver water to the territory annexed to the city without the latter's consent, but also determined that the district and its board of directors should not issue bonds for the purpose of "constructing, operating and installing water facilities" within that portion of the district included in the boundaries of the City of San Diego, unless consent for such construction, installation and operation "is first obtained from plaintiff." However, the charter provision in question does not purport to control the authority of the water district to issue bonds for the construction of water facilities. Moreover, there is no indication in the Water District Act that an improvement district within a water district may not include territory annexed to a city. Neither is there any statutory requirement that, under a situation such as is presented by the facts in this case, the consent of the city first must be obtained before proceedings may be undertaken to form an improvement district which includes annexed territory or to issue bonds in connection therewith. Furthermore, as the validity of the bond issue in question might be attacked only in a proceeding maintained by an elector or taxpayer of the district, the city was foreclosed from questioning the same through the instant action. (*Orcutt* v. *Pasadena Land & Water Co.*, 152 Cal. 599, 601-602 [93 P. 497]; *McConoughey* v. *City of San Diego*, 128 Cal. 366, 367 [60 P. 925].) The latter reason alone, directs a modification of that part of the judgment involving the issuance of bonds.

 The interveners, who are taxpayers within the district and the owners of two parcels of property within the annexed area, also appeal from the judgment because the court failed to adjudicate the issues presented by their complaint in intervention with respect to the validity of the improvement district, the contemplated issuance of bonds, and the action of the water district's board of directors in the premises. They claim that the proceedings taken to form the improvement district did not conform to the requirements of the statute, and also that the provisions thereof respecting its formation deny them due process of law. The complaint in intervention contained three causes of action; the first thereof, in substance, adopted the allegations of the plaintiffs' complaint; and the remaining two causes of action contained allegations purportedly sustaining their attack upon the validity

of the improvement district. The court made no findings with respect to the latter allegations.

In view of the restricted nature of the proceedings instituted by the city, it is evident that the contentions advanced by the interveners extend the scope of the remedy sought through the original complaint and, under the general rule that an intervener may not broaden the scope of the procedure or remedy offered the original plaintiff, may not be considered in the instant action. (*Wright* v. *Jordan,* 192 Cal. 704, 717 [221 P. 915]; *Boskowitz* v. *Thompson,* 144 Cal. 724, 729 [78 P. 290]; *People* v. *Perris Irr. Dist.,* 132 Cal. 289 [64 P. 399, 773]; *Muller* v. *Robinson,* 174 Cal.App.2d 511, 515 [345 P.2d 25]; *LePleux (Py)* v. *Applegate,* 164 Cal.App.2d 9, 11 [330 P.2d 65]; *Redevelopment Agency* v. *Hayes,* 122 Cal.App.2d 777, 785 [266 P.2d 105]; *Bernheimer* v. *Bernheimer,* 87 Cal. App.2d 242, 245 [196 P.2d 813]; *People* v. *Brophy,* 49 Cal. App.2d 15, 35 [120 P.2d 946]; *Lindsay-Strathmore Irr. Dist.* v. *Wutchumna Water Co.,* 111 Cal.App. 707, 712 [296 P. 942].) The trial court properly disregarded those causes of action which increased the scope of the proceedings instituted by the plaintiff, and its judgment in the premises must be sustained upon this ground. Even though the interveners, as taxpayers, were entitled to question the validity of any bond issue proposed by the district (*Gibson* v. *Board of Supervisors,* 80 Cal. 359, 366 [22 P. 225]; see *Peery* v. *City of Los Angeles,* 187 Cal. 753 [203 P. 992, 19 A.L.R. 1044]; *Clark* v. *City of Manhattan Beach,* 175 Cal. 637 [166 P. 806, 1 A.L.R. 1532]), they were not entitled to do so as interveners in the action commenced by the city, which was limited to a consideration of the effect of the subject charter provision upon the authority of the water district. For the reasons heretofore noted, the city was not entitled to attack the proposed bond issue; the interveners were not entitled to enlarge the scope of the city's remedy; and the modification of the judgment by striking the provisions thereof with respect to the bond issue in question is in order.

 Furthermore, the interveners had no authority to bring an action to annul the existence of the improvement district because of a failure to comply with the law under which it purportedly was incorporated, or because of the unconstitutionality of that law. Such a remedy is not available to a taxpayer as such; may be obtained only through a proceeding in quo warranto instituted by the Attorney General;

and the complaint in intervention, insofar as it sought such relief, did not conform to the requirements of the law in the premises. (*San Ysidro Irr. Dist.* v. *Superior Court, supra,* 56 Cal.2d 708, 714, 716; *Keech* v. *Joplin,* 157 Cal.1 [106 P. 222]; *Wilson* v. *City of San Bernardino, supra,* 186 Cal.App.2d 603, 611.)

The judgment is modified by striking therefrom that part thereof which enjoins the defendant from issuing bonds, i.e., paragraph 5 of the judgment, and as modified is affirmed. The appeal from the order denying the interveners' motion for a new trial is dismissed. None of the parties shall recover costs on appeal.

Griffin, P. J., and Shepard, J., concurred.

The petition of defendants and appellants for a hearing by the Supreme Court was denied April 18, 1962.