TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 19-1201 |
| of | : | August 24, 2020 |
| XAVIER BECERRA<br>Attorney General | : | |
| MANUEL M. MEDEIROS<br>Deputy Attorney General | : | |

_____

JEREMIAH BROSOWSKE (Relator) requests leave to sue Defendants CITY OF HESPERIA and BRIGIT BENNINGTON in quo warranto to remove Defendant Bennington from the District 4 seat on the Hesperia City Council, on the ground that Relator is lawfully entitled to hold that seat, but was wrongfully unseated by the City Council due to an alleged ineligibility to hold the office.

CONCLUSION

Relator raises substantial issues of fact and law as to his eligibility to hold the District 4 seat on the Hesperia City Council and, therefore, as to Defendant Bennington's present right to hold that seat. Because it is in the public interest to have those issues judicially resolved, Relator's request for leave to sue is GRANTED.

1

ANALYSIS

Relator Jeremiah Brosowske contends that he was lawfully elected to the District 4 seat on the Hesperia City Council, but that he was then unlawfully ousted from that seat by the Council in September 2019. The Council found that a vacancy existed in the office because, in its assessment, Relator was not and had not been a registered voter and resident of Hesperia District 4 at all times related to his office-holding, as required by statute and county ordinance. The Council thereafter appointed Defendant Brigit Bennington to replace Relator as the District 4 representative. Relator now seeks leave to sue Bennington and the City of Hesperia in quo warranto. He seeks an order removing Bennington from the disputed seat and restoring him to that office, as well as other relief. For the reasons stated below, we GRANT Relator's request to proceed in quo warranto.

### *Background*

On May 23, 2018, Hesperia City Council member (and Mayor) Russ Blewett died, leaving a vacancy on the Council. Relator decided to run for Mr. Blewett's former seat, which represented the city's District 4.[1] Relator asserts that, shortly after the vacancy opened, he moved from his home in Apple Valley to the home of a friend, William Jensen, at 8075 E Avenue, which is located in District 4 of the City of Hesperia. On July 11, 2018, the Council appointed Relator to fill the District 4 seat, pending the election later in November.

On July 25, 2018, Relator obtained his nomination papers from the city election official to run for the District 4 seat.[2] This date is significant because, under the Government Code and a Hesperia city ordinance, a candidate for the District 4 seat on the City Council must be a resident and registered voter of District 4, as of the date on which he or she obtains nomination papers for election.[3] At the November 6, 2018 election, Relator was elected to a four-year term in the District 4 seat, defeating Bennington for the position.

---

[1] In June 2017, the City Council voted to establish a by-district election system and a sequence of elections to begin in November 2018. Five districts were created; the council members representing Districts 2, 3, and 4 were elected at the November 2018 election. (Hesperia Ordinance No. 2017-09; see Hesperia Mun. Code, § 1.09.020.)

[2] See Elec. Code, § 10227 (nomination papers).

[3] Gov. Code, §§ 34882, 36502, subd. (a); Hesperia Mun. Code § 1.09.020(B).

2

Some five months later, at the April 2019 City Council meeting, William Jensen—with whom Relator claimed to reside at an address within District 4—informed the Council that Relator, in fact, never did reside with him and therefore had not been a resident of District 4 on July 25, 2018.[4]  At the August 2019 Council meeting, Councilmember Cameron Gregg requested that the agenda for the September meeting include consideration of appointing a special counsel to investigate "potential felony voter fraud" by Relator. Councilmember William Holland requested that the September meeting agenda also include a vote to declare Relator's seat vacant.

On September 3, 2019, the date of a scheduled City Council meeting, Relator filed a preemptive action in San Bernardino County Superior Court, in which he sought an ex parte order that would have prohibited the Council from declaring the District 4 seat vacant, and required the Council to proceed through an action in quo warranto if the Council desired to remove him from office.[5] The trial court denied the requested relief,[6] and the Council meeting proceeded as scheduled.  At the meeting, the Council (by a 3-2 vote) appointed a special counsel to investigate Relator's residency and, thereafter, declared the District 4 seat vacant.  On October 15, 2019, the Council appointed Bennington to serve as the District 4 representative until the next general municipal election on November 3, 2020. The person elected at that time will hold office for the remainder of the term.[7]

---

[4] Defendants submitted a declaration from William Jensen in their opposition to Relator's application, in which Jensen attests that Relator, in fact, never resided at his home, "though we had planned for him to do so."  Jensen acknowledged, nevertheless, that he previously signed a document confirming that Relator resided with him, in order to help Relator find his own place within the district.  Jensen also acknowledged that he sometimes "sarcastically" referred to Relator as his "roommate."  In May 2019, Jensen submitted an "Election Voter Complaint Form" to the Secretary of State, alleging possible voter fraud on the part of Relator.

[5] *Brosowske v. Hesperia City Council*, San Bernardino County Superior Court No. CIVDS1926015.

[6] The superior court's minute order from the hearing on Relator's ex parte motion states, "Ex parte application argued.  After argument, court finds: ex parte orders denied." According to Relator's characterization of the ruling, "With reasoning influenced by separation of powers and *Klose v. Superior Court* [(1950) 96 Cal.App.2d 913, and cited below], the Court declined to interfere in a future council action. The Court also noted that Proposed Relator had not yet been removed and might not be removed, suggesting that Proposed Relator's request was premature."  Defendants, whose counsel was also present at the hearing, do not dispute Relator's characterization.

[7] Gov. Code, § 36512, subd. (b)(2)(A).

Relator now seeks leave to sue in quo warranto to unseat Bennington on the ground that Relator's removal, and therefore Bennington's appointment, were unlawful.

### *The Quo Warranto remedy*

"Quo warranto," literally meaning "by what authority," was a writ at common law, by which the Crown instituted a formal inquiry into whether a subject had the right to hold public office.[8]  The remedy has evolved to become a judicial action brought by the sovereign people of the state, through their attorney general, to try a public officer's right to hold the public office.  In California, the remedy is currently codified in section 803 of the Code of Civil Procedure.[9]

An individual (known as the "relator")[10] who seeks to bring a quo warranto action must first obtain the consent of the Attorney General,[11] and the decision whether to grant that consent (or "leave to sue") lies within the Attorney General's broad discretion.[12]  In deciding whether to grant leave to sue, we do not resolve the merits of the dispute itself, but only "decide whether the application presents substantial issues of fact or law that warrant judicial resolution, and whether granting the application will serve the public interest."[13]  In the circumstances presented by this case, we must also consider as a

---

[8] *Rando v. Harris* (2014) 228 Cal.App.4th 868, 875 (*Rando*); 101 Ops.Cal.Atty.Gen. 76, 77 (2018).

[9] The statute provides: "An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise, or against any corporation, either de jure or de facto, which usurps, intrudes into, or unlawfully holds or exercises any franchise, within this state."  (Code Civ. Proc., § 803.)

[10] Quo warranto actions are brought by the Attorney General, in the name of the People of the State of California, "on relation" (*ex rel.*) of a private person.  (See *People ex rel. Leavitt v. Bass* (1910) 15 Cal.App. 62, 66 ["Leavitt is merely the relator—the informant"]; *People ex rel. Goodell v. Garrett* (1925) 72 Cal.App. 452, 455; 73 Ops.Cal.Atty.Gen. 197, 201 (1990) [relator "acts merely as informant"]; 35 Ops.Cal.Atty.Gen. 198, 199 (1960) [same].)

[11] *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1228-1229 (*Nicolopulos*).

[12] *Rando, supra*, 228 Cal.App.4th at pp. 877-878.

[13] *Rando, supra*, 228 Cal.App.4th at p. 879; 101 Ops.Cal.Atty.Gen. 16, 17 (2018); 87 Ops.Cal.Atty.Gen. 30, 31 (2004) (Attorney General makes no final judgment).

preliminary matter whether quo warranto is an appropriate remedy.[14]

### *Quo Warranto is an appropriate remedy here*

For quo warranto to be an available remedy, the defendant must be holding a public office, and the relator must be challenging the defendant's right to hold that office.[15] The position of city council member is a public office for quo warranto purposes.[16]

Commonly, the relator in a quo warranto proceeding challenges the qualifications of the defendant officeholder, for example, by alleging defendant's ineligibility to hold the office because of a nonqualifying residence.[17] Here, however, although Relator challenges Bennington's right to hold the District 4 seat, he does not challenge her qualifications for the office. Rather, he disputes the existence of the vacancy in the District 4 seat that she was appointed to fill. Stated otherwise, in this context it is *Relator's* eligibility, rather than *Defendant's,* that is ultimately at issue. Despite its unusual framing, this circumstance has been found to be a proper use of a quo warranto proceeding.

In *Klose v. Superior Court*,[18] for example, the Court of Appeal, construing the California Supreme Court's opinion in *People v. Brite*,[19] stated that "where the appointing power considers a vacancy to exist, it may appoint a successor, without proceedings to declare the vacancy to exist, and that when it does so appoint[,] the official succeeded may by quo warranto question whether there was any vacancy."[20] Accordingly, where the existence of a vacancy is summarily declared but disputed, as it was here, the ousted officer is assured that "he may always have his day in court before it can be conclusively adjudged against him that the office was vacant at the time the [successor's] appointment was made."[21]

---

[14] 102 Ops.Cal.Atty.Gen. 20, 22 (2019); 101 Ops.Cal.Atty.Gen. 24, 27-28 (2018).

[15] 102 Ops.Cal.Atty.Gen., *supra,* at p. 22; 96 Ops.Cal.Atty.Gen. 36, 41 (2013).

[16] 99 Ops.Cal.Atty.Gen. 74, 76 (2016); 87 Ops.Cal.Atty.Gen., *supra*, at p. 31.

[17] See, e.g., 102 Ops.Cal.Atty.Gen. 56 (2019) (application to sue incumbent city councilmember based on residency); 101 Ops.Cal.Atty.Gen. 70 (2018); 101 Ops.Cal.Atty.Gen. 42 (2018); 99 Ops.Cal.Atty.Gen. 74, *supra*.

[18] *Klose v. Superior Court* (1950) 96 Cal.App.2d 913 (*Klose*).

[19] *People ex rel. Tracy v. Brite* (1880) 55 Cal. 79.

[20] *Klose*, *supra*, at p. 917.

[21] *Klose*, *supra*, 96 Cal.App.2d at p. 918, quoting *People ex rel. Fleming v. Shorb* (1893) 100 Cal. 537, 540-541; see also *Nicolopolus*, *supra*, 91 Cal.App.4th at p. 1228 (no due

5

Based on *Klose*, we have previously granted an elected mayor leave to sue in quo warranto for the purpose of testing the right of his appointed successor to the office, which had been declared vacant on residency grounds.[22] Inasmuch as the material facts here are indistinguishable from those cases, we conclude that quo warranto is an appropriate remedy to test Bennington's right to hold the District 4 seat based on the Council's summary declaration of a vacancy that she was appointed to fill.

### *Relator raises substantial issues of law and fact concerning his eligibility to hold the District 4 seat on the Hesperia City Council*

As we explained above, in deciding whether to grant leave to sue, we do not resolve the merits of the dispute, but only decide whether the application presents substantial issues of fact or law that warrant judicial resolution, and whether granting the application will serve the public interest. Where, as here, the relator is himself claiming unlawful dispossession from the office at issue, he presents a "right distinct in kind from the right of the general public enforceable by an action in the nature of quo warranto."[23] Relator's election and swearing-in invested him with at least prima facie title to the office.[24] In these circumstances, leave to sue will ordinarily be granted where the supporting documents and evidence "are in proper legal form and prima facie sufficient."[25]

We review first the eligibility requirements that underlay the City Council's declaration of a vacancy in the District 4 seat. Government Code section 34882 provides, in relevant part: "A person is not eligible to hold office as a member of a municipal legislative body unless he or she . . . resides in the district and both resided in the geographical area making up the district from which he or she is elected and was a registered voter of the city at the time nomination papers are issued to the candidate . . . ."[26] Similarly, Government Code section 36502 provides: A person is not eligible to hold office as councilmember, city clerk, or city treasurer unless he or she is at the time of assuming

---

process violation because quo warranto procedure provides for restoration to office and damages).

[22] 79 Ops.Cal.Atty.Gen. 21 (1996); see also 73 Ops.Cal.Atty.Gen. 197, *supra* (leave to sue granted to ousted appointed member of school district personnel commission, whose office had been declared vacant on residency grounds).

[23] 84 Ops.Cal.Atty.Gen. 206, 207 (2001), citing *International Assn. of Fire Fighters v. City of Oakland* (1985) 174 Cal.App.3d 687, 697.

[24] *Duley v. Peacock* (1911) 17 Cal.App. 418, 422.

[25] 84 Ops.Cal.Atty.Gen., *supra*, at p. 207.

[26] Gov. Code, § 34882.

the office an elector of the city, and was a registered voter of the city at the time nomination papers are issued to the candidate . . . ."[27] Finally, Hesperia city ordinance requires: "[T]he city council member elected to represent a district must reside in that district and be a registered voter in that district, and any candidate for city council must reside in, and be a registered voter in, the district in which he or she seeks election at the time nomination papers are issued . . . ."[28]

Regarding the legal requirements to establish residency, we observe that "residence" here, means "legal residence" or "domicile."[29] A person's legal residence or domicile is defined as a place of "physical presence plus an intention to make [the] place a permanent home."[30] The City Council declared a vacancy based on its belief that Relator was not domiciled in District 4 on and after July 25, 2018. A person need not intend to make a specific house or dwelling his or her permanent home in order to establish a domicile within the relevant electoral jurisdiction.[31] While a person may have multiple residences, a person may have only one domicile at any given time.[32] Factors considered in determining domicile include the person's acts and declarations, mailing address, voter registration, tax

---

[27] Gov. Code, § 36502, subd. (a).

[28] Hesperia Mun. Code, § 1.09.020(B).

[29] *Walters v. Weed* (1988) 45 Cal.3d 1, 7; *Smith v. Smith* (1955) 45 Cal.2d 235, 239; 101 Ops.Cal.Atty.Gen., *supra,* at p. 17; 72 Ops.Cal.Atty.Gen. 8, 11 (1989).

[30] *Fenton v. Board of Directors* (1984) 156 Cal.App.3d 1107, 1116; see Elec. Code, §§ 349, subd. (b), 2021, subd. (b); Gov. Code, § 244, subd. (a).

[31] See, e.g., 101 Ops.Cal.Atty.Gen., *supra*, at p. 22 (2018) (finding intent to make electoral district permanent residence notwithstanding temporary housing within that district). The court in *DeMiglio v. Mashore* (1992) 4 Cal.App.4th 1260 observed:

> [T]he concept of a temporary versus permanent move has to do with the territorial jurisdiction, not the actual dwelling place: [T]he notions of permanency and an intention to remain which attach to the domicile concept have nothing to do with the actual dwelling, and everything to do with the actual place or location. A person could be domiciled in one town all his or her life and have many residences, some obviously temporary.

(*Id.* at pp. 1269-1270, internal quotation marks omitted; see also *Collier v. Menzel* (1985) 176 Cal.App.3d 24, 31 ["While a park may not be legally designated as a place for camping, it is a physical area where a person can sleep and otherwise use as a dwelling place"].)

[32] Elec. Code, § 349, subd. (b); Gov. Code, § 244, subd. (b).

7

returns, driver's license, and homeowner's exemption.[33]

Defendants argue that Relator, in his quo warranto application, failed to submit evidence that he was a registered voter of the City as of the critical date. They contend, therefore, that Relator "failed to establish one of the two key elements of residency required to hold office on the Council."[34] But Relator need not conclusively prove his entitlement to office to gain our consent to sue. For our purposes, Relator need only show the existence of substantial issues of law or fact warranting judicial resolution concerning his eligibility to hold office. And we find here that Relator has sufficiently met his burden. Relator submitted a copy of his Declaration of Candidacy in support of his application to us, and this sworn document does attest, "I am a registered voter." The Declaration was signed on August 9, 2018, some 14 days after Relator obtained his nomination papers.

Additionally, Defendants' own submissions suggest that Relator was a registered voter in the City of Hesperia District 4 on the critical date. Defendants submitted a copy of the voter-fraud complaint that William Jensen sent to the Secretary of State. There, Jensen stated: "On or about June 21, 2018, I challenged Jeremiah [Brosowske] as to why Voter Registration card [sic] was coming to my house? He never gave an answer."[35] The mailing of the Relator's Voter Registration card to Mr. Jensen's address is, in itself, an indication that as of that date Relator was registered as residing at that address, i.e., even if that circumstance is disputed.

Moreover, the City Council has publicly posted Relator's sworn application for appointment to the seat vacated by the death of Mayor Blewett. In that application, dated July 2, 2018, Relator listed both his home address and his mailing address.[36] The application clearly indicated that an applicant must be registered to vote in the City of Hesperia, and that the address listed on the application form would be used "for voter registration verification." The application bears the hand-written notation: "VR verified

---

[33] 99 Ops.Cal.Atty.Gen., *supra,* at pp. 76-77.

[34] Defendants' Memorandum in Opposition, p. 3.

[35] Defendants' Opposition, Exh. B, Attachment 1.

[36] Relator's application is appended to the agenda for the July 11, 2018 City Council meeting, available at https://hesperia.legistar.com/MeetingDetail.aspx?ID=613251&GUID=5A3F6C8D-4DB7-46A0-A3BC-B1BF311B958A&Options=info&Search= (as of Aug. 21, 2020). The addresses are redacted from the public document; applicants were advised on the form that personal information would not be made public. We have no reason to doubt that Relator gave as his home address, "8075 E Avenue, Hesperia," and Defendants have not alleged that Relator gave a different address on his application for appointment.

"7/21/18." If, as would appear, the abbreviation "VR" stands for "voter registration,"[37] then this verification occurred four days *before* Relator obtained his nomination documents on July 25, 2018.

The City Council declared a vacancy based on its belief that Relator was *not* legally residing, or "domiciled," within District 4 on and after July 25, 2018. The issue is thus whether Relator *was* domiciled somewhere within District 4 as of that date.[38] On this point, Relator states in a sworn declaration that: "Since late May, 2018, and prior to obtaining the paperwork necessary to run for office, I changed my residence from Apple Valley, California to my friend's residence located in Hesperia, District 4."[39] And: "Since pulling papers to run for office, and indeed prior to this and prior to serving the unexpired term of the previous councilmember representing District 4, I had not lived in my prior residence in Apple Valley. Instead, I resided at my friend's house in District 4, and intended to make District 4 my permanent home."[40] Also, as we discussed above, Relator's application for appointment to the City Council appears to support his claim to have resided as a registered voter at 8075 E Avenue in Hesperia on July 25, 2018—i.e., within District 4.

Relator's nomination papers indicate that he gave his address "as registered to vote," at "8075 E Avenue" in Hesperia, the home of William Jensen. And Relator has submitted multiple declarations from witnesses describing indicia of Relator's lodging at the Jensen home.[41] Some of them witnessed having seen Relator's clothing there; others reported having dropped off both Jensen and Relator at the residence; and others heard Jensen sometimes refer to Relator as his "roommate," a fact that Jensen himself acknowledged in his sworn affidavit that was included in Defendants' submission.[42]

---

[37] All of the applications for appointment bear the same hand-written "VR" notation, with different dates on which the apparent verification took place.

[38] In his submissions to us, Relator does not identify an address other than "8075 E Avenue" as his residence on July 25, 2018.

[39] Relator's Verified Statement, ¶ 4.

[40] *Id.,* ¶ 5.

[41] Defendant objects to statements made in Relator's supporting declarations on grounds of hearsay. However, we are not conclusively adjudicating facts or law, but are simply determining whether to allow Relator to initiate a quo warranto action, wherein any and all evidentiary objections may be submitted to the court for consideration and adjudication.

[42] Jensen states that he used the term only "sarcastically," a claim that can be tested in court.

Relator also submitted documents tending to prove that, in September 2018, he established residence at 16784 Sultana Street, also in District 4 of Hesperia. Relator's declarants have attested to seeing indications that Relator resided first at the 8075 E Avenue location and then at the 16784 Sultana Street location.

Relator's supporting declarations are met with insistent statements to the contrary from Defendants' declarants. Based on those statements, Defendants contend that Relator's domicile was elsewhere than in District 4, from the date on which he obtained his nomination papers to September 3, 2019, when the City Council declared his seat vacant. But Defendants submit no affirmative evidence to show that Relator resided elsewhere. Critically, Defendants do not show that Relator has failed to make a prima facie case of residency in District 4 during the relevant timeframe. What we do have is a legal and factual dispute, suitable for judicial resolution, as to whether Relator was domiciled within District 4 at all times relevant to his office-holding.

We find, then, that Relator has raised substantial issues of law and fact warranting judicial resolution on the question of his eligibility to hold office and, therefore, whether a vacancy in the District 4 seat existed on September 3, 2019, when the City Council declared that seat vacant.

### *The public interest will be served by authorizing this Quo Warranto action*

We have generally viewed the existence of a substantial question of law or fact as presenting a sufficient "public purpose" to warrant granting leave to sue in quo warranto.[43] Here, we believe the public interest would also be served by a judicial determination whether a vacancy ever existed in Relator's District 4 seat and thus whether Bennington was validly appointed to fill such a vacancy.[44] This determination would serve the public, to ensure "the integrity of public office and . . . the qualifications of [public] officials."[45]

---

[43] 86 Ops.Cal.Atty.Gen. 82, 85 (2003).

[44] 73 Ops.Cal.Atty.Gen. 197, 200-201, 212 (1990).

[45] 97 Ops.Cal.Atty.Gen. 12, 20 (2014), citing 95 Ops.Cal.Atty.Gen. 43, 49 (2012). As mentioned, an election to fill the District 4 seat for the remainder of what was originally Relator's four-year term will be held on November 3, 2020, but this does not alter our conclusion that a judicial resolution of this matter is in the public interest. First, the holding of the election will not render Relator's action moot because Relator, if he prevails on his claim that the Council unlawfully declared his seat to be vacant, would be entitled to serve out the four-year term to which he was elected in November 2018. In addition, as discussed above, an official removed from office in the manner that occurred here "may always have his day in court before it can be conclusively adjudged against him that the office was

19-1201

We therefore GRANT Relator's application for leave to sue in quo warranto.

\*\*\*\*\*

---

vacant at the time the [successor's] appointment was made." (*Klose*, *supra*, 96 Cal.App.2d at p. 918, quoting *People ex rel. Fleming v. Shorb*, *supra*, 100 Cal. at p. 541.)